54 P.3d 954

**Ruth DODGE–FARRAR, Plaintiff–Appellant,**

v.

**AMERICAN CLEANING SERVICES COMPANY, INC., Defendant–Respondent.**

**No. 27740.**

Court of Appeals of Idaho.

Sept. 11, 2002.

840

Bujak Law, P.L.L.C., Nampa, for appellant. John T. Bujak argued.

Ringert, Clark Chtd., Boise, for respondent. James G. Reid argued.

GUTIERREZ, Judge.

Ruth Dodge–Farrar appeals from the district court's grant of summary judgment to American Cleaning Services Company, Inc. on Dodge–Farrar's negligence claim. We affirm that portion of the summary judgment that is based on the absence of expert opinion testimony to establish causation of a permanent physical deformity to Dodge–Farrar's ankle. We reverse that portion of the summary judgment that is based on the exclusion of lay opinion testimony to establish causation of Dodge–Farrar's alleged injuries to her ankle, knee and back.

I.

FACTS AND PROCEDURAL HISTORY

Dodge–Farrar worked at Micron's MCMS facility in Nampa, Idaho where American Cleaning Services Company, Inc. (ACS) provided janitorial services, including cleaning the floors. In May 1998, as Dodge–Farrar was leaving work, she slipped on the floor at the facility. Dodge–Farrar alleged she sustained knee, ankle and back injuries, including a permanent "valgus deformity" to her ankle, all of which were caused by ACS's negligent maintenance of the floor.

ACS moved for summary judgment based on Dodge–Farrar's failure to establish causation. Dodge–Farrar provided her own affidavit which discussed her injuries in opposition to the motion, but she did not submit expert opinion testimony regarding causation.[1] The district court determined that a

---

1. Dodge–Farrar's affidavit stated, in relevant part:

> 3. On May 29, 1998, I was working at MCMS in Nampa. At the end of my work day, I left MCMS. In leaving the facility, I had to cross an area of floor. Upon information and belief, the Defendant had stripped the floor with solvent and/or water leaving the surface slippery.
>
> 4. Defendant did not post any signs or leave any other indicia of the floor's slippery condition.

> 5. I slipped on the floor and fell while crossing the surface. I was injured during the fall and unable to stand or sit up without assistance due to the injury to my ankle and my knee.
>
> 6. Immediately after the fall, my ankle and knee swelled and I could not walk without assistance. The cause of the swelling was the fall.
>
> 7. I sought medical treatment for my injuries. I was provided medical treatment by

layperson is not permitted to provide opinions on the causation of medical conditions and did not consider Dodge–Farrar's affidavit regarding the cause of her injuries. The district court granted summary judgment in favor of ACS because Dodge–Farrar presented no admissible evidence on the element of causation for the negligence claim. Dodge–Farrar moved for reconsideration, which the district court denied.

## II.

## STANDARD OF REVIEW

■ Summary judgment under Idaho Rule of Civil Procedure 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App.1994).

## III.

## DISCUSSION

■ Dodge–Farrar argues that the district court abused its discretion by failing to consider her affidavit in support of causation for her injuries. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Baxter v. Craney*, 135 Idaho 166, 169, 16 P.3d 263, 266 (2000); *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■ Idaho Rule of Evidence 701 permits lay witnesses to testify in the form of an opinion or inference only if the opinion or inference is rationally based on the perception of the witness, and the testimony is helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. *See Kolln v. Saint Luke's Reg. Medical Ctr.*, 130 Idaho 323, 330, 940 P.2d 1142, 1149 (1997). Although the admission of layperson opinion testimony is usually within the discretion of the district court, the general rule in Idaho is that a layperson is not permitted to testify regarding the cause of a medical condition. *Cook v. Skyline Corp.*, 135 Idaho 26, 35, 13 P.3d 857, 866 (2000); *Bloching v. Albertson's, Inc.*, 129 Idaho 844, 846, 934 P.2d 17, 19 (1997); *Evans v. Twin Falls County*, 118 Idaho 210, 214, 796 P.2d 87, 91 (1990); *See Flowerdew v. Warner*, 90 Idaho 164, 172, 409 P.2d 110, 115 (1965). This limitation applies, however, only where the subject matter regarding the cause of

Miers Johnson, M.D., who practices in Nampa, Idaho. My treatment included several office visits and surgery. The medical services provided to me cost a total of $7,461.73 to date, and I am still seeking medical attention for the injury.

8. Both of my ankles used to be approximately the same size. After the fall, and as a result of the fall and injury to my knee and ankle, one of my ankles is obviously bigger than the other one. As a result, I must now buy two different sized shoes when I purchase footwear.

9. Before my fall I was able to stand and walk for longer periods of time. I was also able to bend and reach objects located at low heights with less difficulty. After the fall, and as a result thereof, I can no longer stand or walk for extended periods of time, and I can no longer bend to reach objects. As a result I can no longer adequately clean my home and have had to hire a cleaning woman to clean.

10. After the fall, I have continued to suffer physical pain from the injuries and emotional frustration from the disfigurement of my ankle and loss of my ankle's use. The pain and emotional frustration are caused as a result of the accident. Further, since the fall, and as a cause thereof, I suffer continuous physical pain in my back.

disease, injury or death of a person is wholly scientific or so far removed from the usual and ordinary experience of the average person that expert knowledge is essential to the formation of an intelligent opinion. *See Evans,* 118 Idaho at 214, 796 P.2d at 91; *Kolln,* 130 Idaho at 330, 940 P.2d at 1149. When alleged injuries are of a common nature and arise from a readily identifiable cause, there is no need for the injured party to produce expert testimony. *Choi v. Anvil,* 32 P.3d 1, 3 (Alaska 2001). Requiring expert testimony in all such cases would needlessly increase the cost of litigation, discourage injured persons from bringing small but legitimate claims, and also burden defendants who might feel compelled to hire their own experts in response. *Id.*

We consider two cases that help identify when lay opinion testimony is permissible on the question of causation and expert opinion testimony is not required. In *Cook v. Skyline Corp.,* the plaintiff buyers brought several claims against a manufacturer regarding the defective construction and installation of a manufactured home, including a claim for negligent infliction of emotional distress. *Cook,* 135 Idaho at 29, 13 P.3d at 860. The district court granted the manufacturer's motion for a new trial, ruling that expert testimony was necessary for the plaintiff to recover on a negligent infliction of emotional distress claim. On appeal, the Idaho Supreme Court remanded the case to the district court to determine whether the symptoms suffered by the plaintiffs required expert testimony to establish causation for the negligent infliction of emotional distress claim. *Cook,* 135 Idaho at 35, 13 P.3d at 866. The Supreme Court noted that the symptoms of ulcers and headaches are medical conditions for which expert testimony is required to establish causation, but that other symptoms such as lost sleep, irritability, anxiety and being "shaky voiced" were those to which a layperson should be able to testify he or she had experienced. *Id.*

Although *Cook* did not specify how to determine whether a particular symptom or injury requires expert testimony to establish causation, the earlier *Evans* case provides

guidance on an appropriate analysis. In *Evans,* the plaintiff attempted to present opinion testimony that his wife's cardiac arrest was the result of stress from an event which occurred more than eleven months prior to her death. *Evans,* 118 Idaho at 214, 796 P.2d at 91. Three physicians testified that there was no causal connection between the events. The Supreme Court upheld the district court's decision to exclude the plaintiff's testimony regarding the cause of death, referencing I.R.E. 701 and Idaho case law, holding that layperson testimony regarding the cause of a plaintiff's medical condition is inadmissible. *Id.* The Idaho Supreme Court noted that the standard employed by a majority of states used to distinguish between layperson and expert testimony is the standard that an expert should give an opinion regarding the ultimate cause of death "where the subject matter regarding the cause of disease, injury or death of a person is wholly scientific or so far removed from the usual and ordinary experience of the average person that expert knowledge is essential to the formation of an intelligent opinion. . . ." *Id.* *See also Kolln,* 130 Idaho at 330, 940 P.2d at 1149 (some symptoms may be reasonably based on witness perception).

Based on the rationales in *Cook* and *Evans,* we conclude that a layperson may testify to the causation of medical symptoms or of injuries where such causation is within the usual and ordinary experience of the average person, and also satisfies I.R.E. 701. For example, if a person fell down some steps, landing on a knee, and immediately thereafter felt pain in the knee, saw an open wound on the knee, and within minutes or hours observed that the knee was swelling, that lay person could provide reliable testimony that the pain, wound and swelling were caused by the fall. A layperson could also testify that medical care obtained to treat those immediate symptoms was causally related to the fall. As the claimed symptoms and treatment become more separated in time from the fall, however, the causal relationship becomes more doubtful and tenuous, and expert testimony becomes necessary to establish causation. As time passes, the possibility that prior or subsequent injuries or unrelated disease processes may play

a causal role makes lay opinion unreliable and inadequate to sustain a claim. Accordingly, lay testimony on causation must be limited to the symptoms which are proximate enough to the injury that lay opinion can be deemed competent and reliable. Just where within the time continuum the line must be drawn to exclude lay testimony is necessarily a decision committed to the trial court's discretion based upon the facts and circumstances of the particular case. In addition, even as to symptoms that appear immediately after the traumatic event, lay opinions may be foreclosed if the causation question is not a matter within the common knowledge and experience of the average person. Thus, in the foregoing hypothetical, a layperson might be precluded from testifying that a skin rash which appeared on her arms immediately after the fall was causally related to the fall.

Applying this analysis to the present case, we conclude that the causal relationship between Dodge–Farrar's fall and her *immediate* symptoms in the ankle, knee and back (the pain, swelling, and the inability to sit, stand or walk without assistance) is within "the usual and ordinary experience of the average person." Consequently, the district court abused its discretion in failing to consider Dodge–Farrar's affidavit on causation for such symptoms. On the other hand, the cause of the permanent physical deformity of Dodge–Farrar's ankle and corresponding damages, including the resulting ankle surgery, is not a matter within "the usual and ordinary experience of the average person." The permanent ankle condition as it exists months or years after the fall requires expert testimony to establish causation. The district court properly excluded that portion of Dodge–Farrar's affidavit that purported to opine to the cause of this permanent condition.

Thus, we affirm the summary judgment for ACS regarding the permanent physical deformity of Dodge–Farrar's ankle because its cause cannot be deemed to be within the usual and ordinary experience of a layperson. We reverse the summary judgment, however, with respect to Dodge–Farrar's claim for compensation for symptoms and medical treatment immediately following the fall.

## IV.

## CONCLUSION

We conclude that the district court correctly determined that expert opinion testimony was necessary to establish causation of the permanent ankle deformity. Summary judgment dismissing the claim for this condition is affirmed. We conclude that Dodge–Farrar's affidavit regarding the cause of her immediate symptoms which are within the usual and ordinary experience of the average person should be considered in opposition to ACS's motion for summary judgment. Accordingly, the district court's granting of summary judgment to ACS is reversed in part, and the case is remanded to the district court for proceedings consistent with this opinion. As we are remanding the case for reconsideration of the summary judgment, we will not address Dodge–Farrar's argument regarding whether the district court erred in denying her motion for reconsideration. No attorney fees were requested. Thus, only costs on appeal are awarded to Dodge–Farrar pursuant to I.A.R. 40.

Chief Judge PERRY and Judge LANSING concur.