120 P.3d 289

**Abigail HARRIS nka Abigail Long, Plaintiff–Respondent,**

v.

**Faith A. ALESSI, Defendant–Appellant.**

No. 30444.

Court of Appeals of Idaho.

May 20, 2005.

Review Denied Sept. 13, 2005.

Cooper & Larsen, Pocatello, for appellant.

Ronald S. George, Pocatello, for respondent.

PERRY, Chief Judge.

Faith A. Alessi appeals from a judgment awarding damages, costs, and attorney fees in a personal injury action. Specifically, Alessi challenges the district court's order denying her motions for a new trial, judgment notwithstanding the verdict (J.N.O.V.), a new trial conditioned upon remittitur, and the court's order awarding attorney fees to Long. We affirm.

## I.

## FACTS

Abigail Harris, now known as Abigail Long, and Alessi were involved in an automobile accident that occurred on June 9, 2000. Long suffered injuries as a result of the accident and filed a lawsuit against Alessi. In a pre-trial conference, Alessi admitted liability leaving as the only issue for trial the amount of damages.

The case proceeded to trial before a jury. During voir dire, Long's attorney asked the jury panel, "Are any of you sitting here or members of your family employed by Allstate Insurance Company?" Alessi moved for a mistrial, arguing that the question was prejudicial because it implied that Allstate (Alessi's automobile liability insurer) was in-

volved in the case. The district court took the motion under advisement. Alessi then made a motion in limine to prevent further references to insurance. The district court granted the motion and warned that a mistrial would be granted if there were any references to insurance. Upon the resumption of voir dire, a prospective juror asked Alessi's attorney, "Are you representing [Alessi] or are you representing the insurance company?" Before Alessi's attorney could respond, the district court struck the question. At the close of voir dire, the district court denied the motion for a mistrial.

On direct examination, Long was asked how she felt from the time of the accident until she sought medical attention. Long provided a lengthy explanation stating in part, "I was trying to find a doctor who would see me because ... after, you know, nine or ten days I wasn't feeling better. So I called around and I didn't have health insurance at the time so I tried getting into several doctors." Later when asked why she sought medical attention at the emergency room over four months after the accident Long responded, "I went to the emergency room because up until that day I was having a lot of back pain that was coming up into my neck and I did not have health insurance. My Farm Bureau benefits were exhausted." Alessi again moved for a mistrial on the ground that insurance had been referenced in the presence of the jury and those references violated the district court's order in limine. The district court denied the motion, finding that the references to insurance were references to Long's insurance and not references to insurance Alessi may have had.

Long's chiropractor testified about his treatment of Long. Alessi objected to the chiropractor's testimony with respect to whether he could provide an opinion on the causation of Long's injuries. The district court ruled that the chiropractor could not express a medical opinion regarding whether Long's injuries arose from the June accident. The district court noted that, although the chiropractor could not testify as to causation, he could testify that Long's injuries were consistent with that type of accident. Three other witnesses testified as to Long's health and medical condition prior to the accident and after the accident.

At the close of Long's case, Alessi moved for a directed verdict on the ground that Long failed to prove all of the elements of her case, specifically that her alleged injuries were caused by the June accident. The district court denied the motion and ruled that sufficient evidence had been offered to show a proximate cause relationship between the June accident and Long's alleged injuries.

At the conclusion of the trial, the jury returned a verdict in favor of Long in the amount of $18,000. Alessi filed a motion for J.N.O.V., a new trial, and a new trial conditioned on remittitur. Alessi also filed a motion to disallow attorney fees contending that Long waived her entitlement to attorney fees because she failed to comply with I.C. § 12–120(4). Specifically, Alessi argued that Long had not included a medical bill for $208.50 in her demand letter and, thus, had asserted a significant new item of damage during the trial. The district court denied Alessi's posttrial motions. In denying Alessi's motion to disallow attorney fees, the district court concluded that the bill would not have made a difference in Alessi's offer to settle the case. The district court awarded Long $1,027 in costs and $9,405 in attorney fees. Alessi appeals.

On appeal, Alessi asserts that the district court erred in denying her motion for a mistrial pursuant to I.R.C.P. 59(a)(1) because of references to insurance and insurance companies. Alessi also contends that the district court erred in denying her motions for J.N.O.V. and for a new trial. Finally, Alessi asserts that the district court erred in awarding attorney fees to Long pursuant to I.C. § 12–120(4) and, alternatively, that it erred in awarding more than the amount recoverable under a contingency fee basis.

## II.

### ANALYSIS

**A. Motion for New Trial under I.R.C.P. 59(a)(1)**

■ Alessi argues that the district court erred in denying her motion for a new trial

under I.R.C.P. 59(a)(1) because references were made to insurance and insurance companies despite the district court's order in limine precluding such references. Idaho Rule of Civil Procedure 59(a)(1) provides that a new trial may be granted for "irregularity in the proceedings of the court, jury or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial." On appeal, we review a trial court's decision to grant or deny a new trial for an abuse of discretion, and we will not disturb that decision absent a manifest abuse of this discretion. *Lanham v. Idaho Power Co.*, 130 Idaho 486, 497–98, 943 P.2d 912, 923–24 (1997); *Burggraf v. Chaffin*, 121 Idaho 171, 173, 823 P.2d 775, 777 (1991). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■ Alessi argues that, based on the question during voir dire about Allstate and Long's reference during direct examination to her own insurance company, Farm Bureau, the jury could discern that Allstate insured Alessi. In response to Alessi's motion for a new trial, the district court considered the references to insurance and deemed them to be limited and insufficient to warrant a new trial. Additionally, the district court determined that the reason Long did not receive medical treatment immediately following the accident was a material issue in the case and that her comment about her lack of insurance was therefore relevant to prove a material issue. Moreover, the district court held the reference to insurance during voir dire permissible and noted that an instruction was given to the jury not to consider any statements with regard to insurance. The district court additionally denied the motion because Alessi failed to provide an affidavit stating the facts relied upon in support of the motion as required by Rule 59(a)(7).

■ Long contends that, because Alessi's motion for a new trial was not accompanied by a supporting affidavit, this Court should not consider the argument. Rule 59(a) states that a new trial may be granted for any one of seven reasons. The first allows a court to grant a new trial if there were irregularities in the proceedings. Rule 59(a)(7), however, requires that a motion for a new trial based on irregularities in the proceedings be accompanied by an affidavit stating in detail the facts relied upon in support of the motion. Therefore, upon a motion for a new trial on those grounds that require a supporting affidavit, the court is not required to act in the absence of such affidavit. *Ernst v. Hemenway and Moser, Co., Inc.*, 120 Idaho 941, 944, 821 P.2d 996, 999 (Ct.App.1991).

This Court has upheld the grant of a new trial, however, when no affidavit accompanied the motion. *See id.* In upholding the district court's decision in *Ernst,* this Court noted that the purpose of an affidavit is to give notice of facts previously unknown to the trial court, which support the motion in question. *Id.* Because the trial court had first-hand knowledge of counsel withholding evidence from the jury, this Court concluded that the absence of the affidavit required under Rule 59(a) did not deprive the district court the power to grant relief.

■ In the present case, Alessi did not file an affidavit with her motion for a new trial under Rule 59(a)(1). Although the district court acknowledged the absence of an affidavit as one reason for denial of the motion, the district court went on to consider the motion and denied it based upon the merits. The district court had first-hand knowledge of the proceedings in question. Therefore, we will also address Alessi's arguments on appeal.

■ Alessi contends that the references about insurance constitute sufficient grounds for a new trial. Generally, I.R.E. 411 governs references to liability insurance.[1] That rule provides:

1. We acknowledge that the Idaho Rules of Evi-

dence are not applicable to voir dire examina-

Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Long's attorney asked during voir dire whether a specific casualty insurance company employed any members of the jury or their families. Idaho appellate courts have determined that, in the absence of bad faith, questions regarding insurance are generally permissible if they are utilized to expose bias and not for the purpose of informing the jury about the existence of a party's insurance. See *Kozlowski v. Rush,* 121 Idaho 825, 832–33, 828 P.2d 854, 861–62 (1992); *Owen v. Burcham,* 100 Idaho 441, 444, 599 P.2d 1012, 1015 (1979); *Byington v. Horton,* 61 Idaho 389, 394–95, 102 P.2d 652, 654 (1940); *Shaddy v. Daley,* 58 Idaho 536, 539, 76 P.2d 279, 281 (1938); *Faris v. Burroughs Adding Mach. Co.,* 48 Idaho 310, 316–22, 282 P. 72, 74–76 (1929).

In *Owen,* an attorney asked prospective jurors whether they, or any of their relatives, were employed by or owned stock in any casualty insurance company. Questions about jurors' relationships with casualty insurance companies were asked repeatedly. The Idaho Supreme Court held that such voir dire examination was permissible if made in good faith with the intent to expose bias and not for the purpose of informing the jury about the existence of the defendant's insurance. On the other hand, in *Faris,* an attorney inquired on voir dire whether a prospective juror was connected with a particular insurance company. In addition in *Byington,* each prospective juror was asked whether he or she had ever been employed by or owned stock in a specified casualty insurance carrier, whether any member of his or her family had been employed by that carrier or any insurance company engaged in the business of insuring against automobile accidents, and whether he or she had ever been engaged in the accident insurance business.

ness. In *Faris,* and again in *Byington,* the Idaho Supreme Court adopted the general rule from *Arnold v. California Portland Cement Co.,* 41 Cal.App. 420, 183 P. 171 (1919), which states:

It is entirely proper for counsel to ask the jurors such questions as may reasonably be necessary to ascertain whether they are free from a bias or interest that may affect their verdict. To this end it is proper for counsel, in good faith, to ask of each juror whether he is interested as an agent or stockholder or otherwise in a specified casualty company. Or he may be asked the broad question whether he is interested in any insurance company insuring against liability for negligence. But counsel must take pains to propound such questions in such a manner as not unnecessarily to convey the impression that the defendant is in fact so insured. It is misconduct on the part of counsel for plaintiff in such actions so to frame his question that it goes beyond what is reasonably necessary to serve the legitimate purpose of eliciting the facts he is entitled to adduce in order to secure a jury free from bias or prejudice, if it is also apparent that the question may fairly be said to have the effect of serving the illegitimate purpose of prejudicing the jury by fixing in their minds the idea that the defendant is protected by insurance against liability for negligence.

*Arnold,* 41 Cal.App. at 425–26, 183 P. at 172–73 (citations omitted). Based upon this rule, the Idaho Supreme Court determined that the questions asked in *Faris* and *Byington* were permissible.

Alessi has not provided any evidence, and the record does not reveal, any indication of bad faith or that the voir dire question was not asked with the sole intent to expose bias. In the present case, the district court gave a cautionary instruction to the jury, which explained that the question asked during voir dire was asked "for the sole purpose of discovering the possibility of a biased viewpoint." Therefore, in view of existing precedents, particularly *Faris* and *Byington,* we

are constrained to conclude that the district court did not err by denying Long's motion for a mistrial.[2]

Nevertheless, in a case such as this, where no insurer is a party and there is no reason to believe that the identity of an insurance carrier will come into evidence at trial, we cannot perceive how naming a specific insurance company during voir dire contributes to the purported aim of ferreting out juror bias. If the actual intent is to determine whether there are potential jurors who, because of their experience in the insurance industry, would be biased against a personal injury plaintiff, then a broader question inquiring about their employment by *any* casualty insurer would be far more effective to accomplish the purpose. Counsel for Long acknowledged during oral argument that his inclusion of Allstate Insurance Company's name in his voir dire question did not enable him to gain any greater information about potential juror bias than he would have gained through a more general question about employment in the insurance industry. In our view, naming a specific insurer is not only unnecessary to accomplish the claimed purpose, but is also highly prejudicial in signaling to the jury that the defendant is insured.

 The fact that this practice is not forbidden by Idaho law does not mean that a trial court must allow it. The decision whether to allow inquiries relating to insurance companies during voir dire is a matter within the trial court's discretion. *Kozlowski*, 121 Idaho at 831, 828 P.2d at 860; *see also* I.R.C.P. 47(i)(2). Therefore, the trial judges of this state are free to prohibit this practice in their courtrooms. This could be done effectively by, for example, including in pretrial orders a prohibition against the use of such questions in voir dire unless permission is obtained in advance from the court upon a showing of genuine need. Such a procedure would protect the legitimate interests of both parties.

 In addition to the question during voir dire, other references were made to insurance. Specifically, a juror asked whether one of the attorneys represented an insurance company. However, the attorney did not respond to the question and the district court struck the question immediately. Therefore, the question posited by the juror does not, in itself, provide grounds for a new trial.

 Long also made two references to insurance while on direct examination. The first of these references, however, was in response to a question about how she felt from the time of the accident until she sought medical attention. Long explained that she waited to seek medical attention because she felt all right at first. After pain continued to bother her for nine or ten days, she called several doctors to make an appointment. She stated that she did not have health insurance at the time so it was difficult for her to find a doctor. Long's answer to the question explained why she delayed in seeking medical care. Later, Long was asked why she sought medical attention at the emergency room. Long again explained that she was having back and neck pains and that she did not have health insurance. Long further stated that her benefits at Farm Bureau were exhausted. Although the district court had granted Alessi's motion in limine to prevent references to insurance, the Idaho Supreme Court has held that a reference to insurance during a witnesses' testimony, despite an in limine order, did not require a mistrial. *See Van Brunt v. Stoddard,* 136 Idaho 681, 686–87, 39 P.3d 621, 626–27 (2001).

In *Van Brunt,* the defendant argued that he was denied a fair trial because one of the witnesses testified that the defense's expert witness performed only insurance examinations, even though the district court had issued an order in limine to prevent references to insurance. The Supreme Court concluded that the reference was limited and the district court gave a curative jury instruction at the close of the evidence to disregard the comment. Therefore, in that case the men-

**2.** Although Alessi presents the issue as stemming from the district court's denial of her motion for a new trial, we note that Alessi also moved for a

mistrial during the proceedings. However, because the question has been deemed permissible, it also cannot be the basis for a mistrial.

tion of insurance did not constitute reversible error.

In the instant case, Long referenced insurance in an attempt to explain her pattern of medical treatment. The district court gave a cautionary instruction directing the jury that no insurance company was a party and that the jury must refrain from making an inference or speculation about insurance. We presume that the jury followed the district court's instructions. *See Young v. State Farm Mut. Auto. Ins. Co.,* 127 Idaho 122, 127, 898 P.2d 53, 58 (1995). In summary, we conclude that the attorney's question during voir dire was permissible and Long's answers during direct examination gave relevant evidence and do not warrant a new trial. Further, we note that the juror's question was stricken. Accordingly, we conclude that the district court correctly perceived the issue as one of discretion, acted within the boundaries of that discretion, and made its decision by an exercise of reason. Thus, we cannot find that the district court abused its discretion in denying Alessi's motion for new trial pursuant to Rule 59(a)(1).

## B. Motion for J.N.O.V.

Alessi argues that the district court erred in denying her motion for J.N.O.V. because Long failed to establish that the June accident was the proximate cause of her injuries. In determining whether the motion for J.N.O.V. should have been granted, the appellate court applies the same standard as does the trial court which passed on the motion originally. *Quick v. Crane,* 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). The issue to be determined on a motion for J.N.O.V. is whether substantial evidence supports the jury's verdict. *Lanham,* 130 Idaho at 495, 943 P.2d at 921. Substantial evidence does not require that the evidence be uncontradicted. *Highland Enterprises, Inc., v. Barker,* 133 Idaho 330, 337, 986 P.2d 996, 1003 (1999). Rather, the evidence need only be of sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper. *Id.* Upon a motion for J.N.O.V., the moving party admits the truth of all adverse evidence and all inferences that can

legitimately be drawn from it. *Id.* In ruling on a motion for J.N.O.V., the trial court cannot weigh the evidence, assess the credibility of the witnesses, or make its own factual findings and compare them to those of the jury. *Id.* The trial court draws all inferences in favor of the nonmoving party. *Id.* The motion should be granted only where there can be but one conclusion as to the verdict that reasonable minds could have reached and when that conclusion does not conform to the jury verdict. *Id.* The function of a J.N.O.V. is to give the trial court the last opportunity to order the judgment that the law requires. *Quick,* 111 Idaho at 764, 727 P.2d at 1192.

Alessi asserts that the evidence of causation was insufficient because no expert testified as to the proximate cause of Long's medical condition. Although the admission of layperson opinion testimony is usually within the discretion of the district court, the general rule in Idaho is that a layperson is not permitted to testify regarding the cause of a medical condition. *Dodge–Farrar v. American Cleaning Servs. Co. Inc.,* 137 Idaho 838, 841, 54 P.3d 954, 957 (Ct.App. 2002); *Bloching v. Albertson's, Inc.,* 129 Idaho 844, 846, 934 P.2d 17, 19 (1997); *Evans v. Twin Falls County,* 118 Idaho 210, 214, 796 P.2d 87, 91 (1990). This limitation applies, however, only where the subject matter regarding the cause of disease, injury or death of a person is wholly scientific or so far removed from the usual and ordinary experience of the average person that expert knowledge is essential to the formation of an intelligent opinion. *Dodge–Farrar,* 137 Idaho at 841–42, 54 P.3d at 957–58. When alleged injuries are of a common nature and arise from a readily identifiable cause, there is no need for the injured party to produce expert testimony. *Id.* at 842, 54 P.3d at 958. Requiring expert testimony in all such cases would needlessly increase the cost of litigation, discourage injured persons from bringing small but legitimate claims, and also burden defendants who might feel compelled to hire their own experts in response. *Id.*

In *Dodge–Farrar,* the Supreme Court explained as an example, if a person fell down some steps, landed on a knee, immediately

felt pain in the knee, saw an open wound on the knee, and observed that the knee was swelling, that layperson could provide reliable testimony that the pain, wound, and swelling were caused by the fall. The Supreme Court acknowledged that as the claimed symptoms and treatment become more separated in time from the fall, however, the causal relationship becomes more doubtful and tenuous, and expert testimony becomes necessary to establish causation.

In the instant case, Long testified about how the accident occurred and what injuries she sustained as a result of the accident. Long explained what she felt after the accident and why she saw doctors and even visited the emergency room. Long additionally testified that no intervening events occurred between the accident and the time she visited a doctor and that she did not have any health problems prior to the accident. In addition to Long's own testimony, Long's friend, mother, and husband testified to Long's health and medical condition prior to the accident and her health and condition after the accident. For example, Long's friend testified that, after the accident, Long walked in a rigid manner. Long's mother testified that Long had a hard time sitting down. Also, a chiropractor testified about Long's injuries and stated that, in his opinion, Long's injuries were consistent with the type of automobile accident Long was involved in. Additionally, the chiropractor testified that he was not aware of any intervening causes or circumstances that could have been a factor in Long's injuries and pain.

This evidence was sufficient to allow a jury to find that Long's injuries to her neck and back arose from a readily identifiable source, the automobile accident. Thus, Long did not have to produce expert testimony to establish that the accident was the proximate cause of her injuries. Based on all of the evidence before the jury, the district court did not err in finding that sufficient evidence supported the jury's verdict or in denying Alessi's motion for J.N.O.V.

## C. Waiver of Attorney Fees

Alessi asserts that Long waived her right to an award of attorney fees under I.C.

§ 12–120(4) by submitting evidence and testimony at trial of a significant new item of damage not set forth in the statement of claim she presented to Long before initiating this lawsuit. Idaho Code Section 12–120(4) provides:

In actions for personal injury, where the amount of plaintiff's claim for damages does not exceed twenty-five thousand dollars ($25,000), there shall be taxed and allowed to the claimant, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney's fees. For the plaintiff to be awarded attorney's fees for the prosecution of the action, written demand for payment of the claim and a statement of claim must have been served on the defendant's insurer, if known, or if there is no known insurer, then on the defendant, not less than sixty (60) days before the commencement of the action; provided that no attorney's fees shall be allowed to the plaintiff if the court finds that the defendant tendered to the plaintiff, prior to the commencement of the action, an amount at least equal to ninety percent (90%) of the amount awarded to the plaintiff.

The term "statement of claim" shall mean a written statement signed by the plaintiff's attorney, or if no attorney, by the plaintiff which includes:

(a) An itemized statement of each and every item of damage claimed by the plaintiff including the amount claimed for general damages and the following items of special damages: (i) medical bills incurred up to the date of the plaintiff's demand; (ii) a good faith estimate of future medical bills; (iii) lost income incurred up to the date of the plaintiff's demand; (iv) a good faith estimate of future loss of income; and (v) property damage for which the plaintiff has not been paid.

(b) Legible copies of all medical records, bills and other documentation pertinent to the plaintiff's alleged damages.

If the plaintiff includes in the complaint filed to commence the action, or in evidence offered at trial, a different alleged injury or a significant new item of damage not set forth in the statement of claim, the

plaintiff shall be deemed to have waived any entitlement to attorney's fees under this section.

In the present case, Long submitted a demand letter on March 18, 2002, but did not include a medical bill she had incurred prior to sending the letter in the amount of $208.50. Long attached copies of all other medical bills incurred. Alessi contends that, because Long failed to include the medical bill for $208.50 with the demand letter and statement of claim, there exists a significant change in the amount demanded that was not considered in settlement negotiations. Long argues that, although she failed to submit one medical bill, she substantially complied with Section 12–120(4) and that substantial compliance is sufficient to preclude a waiver of attorney fees. In reaching its decision to award Long attorney fees, the district court found that Alessi and her insurance company already knew about the bill during the settlement negotiations. Additionally, the district court found that, in view of Alessi's small offer in response to the demand, inclusion of the $208.50 bill would not have changed Alessi's settlement offer.

 The interpretation of a statute is an issue of law over which we exercise free review. *Zener v. Velde,* 135 Idaho 352, 355, 17 P.3d 296, 299 (Ct.App.2000). When interpreting a statute, we will construe the statute as a whole to give effect to the legislative intent. *George W. Watkins Family v. Messenger,* 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990); *Zener,* 135 Idaho at 355, 17 P.3d at 299. The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *Watkins Family,* 118 Idaho at 540, 797 P.2d at 1388; *Zener,* 135 Idaho at 355, 17 P.3d at 299.

This Court was recently asked to interpret I.C. § 12–120(4) in *Johnson v. Sanchez,* 140 Idaho 667, 99 P.3d 620 (Ct.App.2004). In *Johnson,* we acknowledged that certain items of damage, including medical bills, are required to be included in the statement of claim. I.C. § 12–120(4)(a). In that case, Johnson complied with the requirements in I.C. § 12–120(4)(a) because she did not present at trial evidence of items not listed in the statement of claim, such as property damage. Johnson did, however, provide evidence of an increased amount of damages, but this Court concluded that Johnson did not thereby waive entitlement to attorney fees.

In the case at hand, Long, unlike Johnson, presented evidence of a new item of damage by failing to include one of her medical bills in her demand letter and then offering evidence of the bill at trial. However, because Alessi and her insurance company already knew about the bill during the settlement negotiations and because the bill was of a *de minimis* amount, we cannot conclude that the "new" item of damage was "significant." Long, therefore, substantially complied with I.C. § 12–120(4). Accordingly, the district court did not err in awarding attorney fees to Long.

### D. Amount of Attorney Fees

 Alessi argues, in the alternative, that the district court abused its discretion in determining the amount of attorney fees to award Long pursuant to I.C. § 12–120(4). Specifically, Alessi argues that, because Long and her attorney agreed to pursue the case on a contingency basis, the district court should have used this basis when awarding fees. The calculation of reasonable attorney fees is within the discretion of the district court. *Bott v. Idaho State Bldg. Authority,* 128 Idaho 580, 592, 917 P.2d 737, 749 (1996).

Long's attorney agreed to pursue the case on a one-third contingency fee basis. After the jury returned a verdict awarding Long $18,000, Long's attorney sought an award of attorney fees on a "time and hour" basis rather than a contingency basis. Long's attorney claimed that he and Long had an oral agreement that the case would be filed for under $25,000 to take advantage of I.C. § 12–120(4) and that he would submit a claim of attorney fees on an hourly basis if the case was successful. In determining the amount of fees to award, the district court acknowledged that the case was taken on a contingency fee basis and found that Long's attorney's request for $135 per hour was unreasonable. The district court reduced the amount to what it considered a more appro-

priate rate, $110 per hour. The district court noted that it took into consideration all of the factors set forth in I.R.C.P. 54(e)(3) [3] to reach its decision.

Idaho Rule of Civil Procedure 54(e)(3) states the factors the trial court is to consider in determining the amount of attorney fees. Idaho Rule of Civil Procedure 54(e)(3)(E), allows a court to consider whether a fee is contingent or fixed in determining the amount of a reasonable attorney fee. However, this is only one factor to be considered. In *Nalen v. Jenkins*, 114 Idaho 973, 763 P.2d 1081 (Ct.App.1988), this Court held that the fact that an award of attorney fees is made to a party does not necessarily require the amount to be limited by the party-attorney agreement.

Based upon the district court's order and the record before us, we conclude that the district court understood this was a discretionary decision, acted within the boundaries of its discretion and consistent with the proper legal standards, and reached its decision by an exercise of reason. Therefore, the district court did not abuse its discretion in awarding attorney fees to Long in the amount of $9,405.

### E. Costs and Attorney Fees on Appeal

Long also requests costs and attorney fees on appeal pursuant to I.C. § 12–120(4). This Court upheld the award of attorney fees below under I.C. § 12–120(4). Therefore, Long is entitled to an award of costs and attorney fees on appeal. *See Miller v. St. Alphonsus Regional Medical Ctr., Inc.*, 139 Idaho 825, 839, 87 P.3d 934, 948 (2004).

3. Idaho Rule of Civil Procedure 54(e)(3) provides that, in the event the court grants attorney fees in a civil action, it must consider the following factors in determining the amount of such fees:
 (A) The time and labor required.
 (B) The novelty and difficulty of the questions.
 (C) The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.
 (D) The prevailing charges for like work.
 (E) Whether the fee is fixed or contingent.
 (F) The time limitations imposed by the client or the circumstances of the case.

## III.

## CONCLUSION

The district court did not err in denying Alessi's motions for a new trial under I.R.C.P. 59(a)(1) and for J.N.O.V. Although Long did submit evidence of a new item of damage, that item was not significant. Thus, Long did not waive her entitlement to attorney fees. Accordingly, the district court did not err in denying Alessi's motions for a new trial, J.N.O.V., or a new trial conditioned upon remittitur. The district court's judgment awarding damages, costs, and attorney fees to Long is affirmed. Costs and attorney fees are awarded to Long on appeal.

Judge LANSING and Judge GUTIERREZ concur.

(G) The amount involved and the results obtained.
 (H) The undesirability of the case.
 (I) The nature and length of the professional relationship with the client.
 (J) Awards in similar cases.
 (K) The reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case.
 (L) Any other factor which the court deems appropriate in the particular case.