IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 41615

| | | |
|---|---|---|
| GARY HOLDAWAY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, April 2015 Term |
| | ) | |
| v. | ) | 2015 Opinion No. 46 |
| | ) | |
| BROULIM'S SUPERMARKET, | ) | Filed: May 21, 2015 |
| | ) | |
| Defendant-Respondent. | ) | Stephen W. Kenyon, Clerk |
| _____ | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Madison County. Hon. Gregory W. Moeller, District Judge.

The judgment of the district court is affirmed.

Gary Holdaway, Boise, appellant pro se.

Carey Perkins, LLP, Boise, for respondent.

_____

J. JONES, Justice

Gary Holdaway filed suit against Broulim's Supermarket, alleging that a titanium screw implanted in his leg was fractured when an automatic door at Broulim's malfunctioned and closed on the leg. Broulim's filed a motion for summary judgment arguing that Holdaway failed to provide admissible evidence that the malfunctioning door fractured the screw and caused the resulting medical complications. The district court agreed, granted the motion, and Holdaway appealed. We affirm.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

On May 4, 2009, Gary Holdaway was struck by an automobile while riding his bicycle in Rexburg, Idaho. He was transported to a local hospital where he underwent surgery, performed by Dr. Ronald Mills, to repair fractures to his right tibia and fibula. That surgery involved placing a metal rod and screws in his right leg. Holdaway's complaint alleges that on May 25, 2009, he was leaving Broulim's Supermarket on a "Rascal" motorized cart when an automatic

1

door malfunctioned, closing on his injured leg and fracturing one of the surgically implanted screws. Holdaway claims that the rod in his leg subsequently shifted as a result of the fractured screw and, because Dr. Mills was unwilling to remove the metal rod and screws before the fracture healed, Holdaway "lived in severe pain for over a year" and now requires an additional surgery on his leg. Holdaway filed suit pro se on June 3, 2011. The complaint requests unspecified medical expenses, unspecified compensatory damages, and punitive damages in the amount of $100,000.

Broulim's moved for summary judgment on April 19, 2013. It argued that there is no genuine issue as to whether the door caused the screw to fracture because Holdaway failed to present any admissible evidence to show as much. In support of its motion, Broulim's submitted an affidavit that included Holdaway's medical records as an attachment. According to Broulim's, there is no indication in any of those records that the alleged incident at Broulim's either did cause or was likely to have caused the screw in Holdaway's leg to fracture. Instead, the only reference to a potential cause of the fractured screw is to an unrelated fall. Holdaway visited Dr. Mills on June 15, 2009, and Dr. Mills' treatment notes indicate that Holdaway "took a fall on [his injured leg]" and he did get "some swelling around the fracture site and some pain," and that "[t]he proximal screw has a little bit of a reverse bend in it." In an affidavit submitted in opposition to summary judgment, Holdaway states that he told Dr. Mills he fell on the stairs leading to his apartment the weekend after the alleged incident at Broulim's, and did not mention the malfunctioning door at Broulim's because he had forgotten about it. Holdaway's medical records show that he returned to Dr. Mills again on June 23, complaining of pain and swelling in his right leg. Again, there is no mention in Dr. Mills' notes that the screw was fractured or of any incident at Broulim's. Holdaway returned again on July 13, 2009, and Dr. Mills' notes indicate that "X-rays . . . . show that the proximal screw has fractured and [Holdaway] has self dynamized the fracture site." According to Holdaway's affidavit, Dr. Mills informed him at this time that the fall at his apartment could not have fractured the screw and that the screw must have been fractured "from a hard hit from the side," but Dr. Mills' treatment notes do not reflect that conversation. Holdaway states that he realized at this point that the incident at Broulim's must have caused the screw to fracture. By August 21, Dr. Mills speculates that the rod and fractured screw "may need to be removed down the road." Holdaway's medical records never mention any incident at Broulim's or discuss in any way the conditions under which the screw

2

might have fractured or would be likely to fracture.

In its memorandum in support of summary judgment, Broulim's argued that the only evidence regarding the cause of the fractured screw are statements in Holdaway's affidavits that are inadmissible either as hearsay or because, as a lay person, Holdaway is not competent to testify as to the cause of a medical condition. In several affidavits, Holdaway expressed the view that the door at Broulim's caused the screw in his leg to fracture and claims that Dr. Mills told him that the screw could not have been broken in a fall. Broulim's moved to strike these statements as inadmissible. In response to the motion for summary judgment, Holdaway submitted an additional affidavit in which he stated that the impact between his leg and the malfunctioning door caused the screw to fracture and that Dr. Mills corroborated that claim in conversation. Broulim's subsequently moved to strike these statements as well. Holdaway did not submit any additional evidence as to the cause of the broken screw, but expressed frustration regarding the challenges he experienced in attempting to litigate the claim from prison, in finding an attorney, and in securing the participation of witnesses.

On July 17, 2013, the district court issued a memorandum decision and order addressing the motions to strike and motion for summary judgment. The court struck Holdaway's reports regarding the content of his conversations with Dr. Mills as hearsay, and struck Holdaway's own statements as to the cause of the fractured screw because Holdaway is not competent to testify on the topic. It then granted summary judgment in favor of Broulim's for lack of any evidence that the fractured screw was caused by the incident at Broulim's. The district court entered judgment and Holdaway appealed. Holdaway argues that the district court erred in granting summary judgment in favor of Broulim's when Broulim's did not present evidence to refute the claim that the malfunctioning door caused the screw to fracture.

## II.
## STANDARD OF REVIEW

This Court exercises *de novo* review of a grant of summary judgment and the "standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment." *Stonebrook Const., LLC v. Chase Home Fin., LLC,* 152 Idaho 927, 929, 277 P.3d 374, 376 (2012) (quoting *Curlee v. Kootenai Cnty. Fire & Rescue,* 148 Idaho 391, 394, 224 P.3d 458, 461 (2008)). Summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When applying this standard, this Court construes disputed facts "in favor of the non-moving party, and all reasonable

3

inferences that can be drawn from the record are drawn in favor of the non-moving party." *Curlee,* 148 Idaho at 394, 224 P.3d at 461. Where "the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Lockheed Martin Corp. v. Idaho State Tax Comm'n,* 142 Idaho 790, 793, 134 P.3d 641, 644 (2006) (citing *Infanger v. City of Salmon,* 137 Idaho 45, 44 P.3d 1100 (2002)). However, to survive summary judgment, "an adverse party may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(c). Therefore, "the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists . . . ." *Jenkins v. Boise Cascade Corp.,* 141 Idaho 233, 238, 108 P.3d 380, 385 (2005) (citing *Northwest Bec–Corp. v. Home Living Serv.,* 136 Idaho 835, 839, 41 P.3d 263, 267 (2002)). "A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.*

*AED, Inc. v. KDC Investments, LLC*, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013).

## III.
## DISCUSSION

### A. The district court properly granted summary judgment in favor of Broulim's.

Holdaway's claim is based upon an allegation of negligence. "The elements of a common law negligence action are (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Black Canyon Racquetball Club, Inc. v. Idaho First Nat. Bank, N.A.*, 119 Idaho 171, 175–76, 804 P.2d 900, 904–05 (1991). Holdaway is quite specific regarding the injury about which he is complaining. The complaint alleges that the malfunctioning door fractured a surgically implanted screw in his right leg, which then caused the metal rod in his leg to shift, resulting in pain and the need to remove the rod and screws. As the plaintiff, Holdaway would have borne the burden at trial of showing that the malfunctioning door caused these injuries. *See Cramer v. Slater*, 146 Idaho 868, 879, 204 P.3d 508, 519 (2009) ("The plaintiff bears the burden of proving every element in a negligence action . . . ."). The district court granted summary judgment due to the lack of any admissible evidence in the record regarding causation. On appeal, Holdaway appears to argue that Broulim's failed to carry its initial burden as the movant on summary judgment because Broulim's did not present evidence directly negating the claim that the malfunctioning door caused Holdaway's injury.

Holdaway is mistaken. Broulim's was not required to support its motion for summary

4

judgment by presenting evidence to negate an element of Holdaway's claim.

> The burden of proving the absence of a genuine issue of material fact rests at all times on the moving party. Where the non-moving party will bear the burden of proof at trial, the moving party's burden may be satisfied by showing the absence of material fact with regard to any essential element of the non-moving party's claim. The absence of a genuine issue of fact with regard to an essential element of the plaintiff's claim renders any other potential issues of fact irrelevant. Once the absence of sufficient evidence on an element has been shown, the burden shifts to the non-moving party to establish a genuine issue of material fact. The non-moving party cannot merely rely upon its pleadings, but must produce affidavits, depositions, or other evidence establishing an issue of material fact.

*Bromley v. Garey*, 132 Idaho 807, 810–11, 979 P.2d 1165, 1168–69 (1999) (internal citations and quotation marks omitted). Because Holdaway would bear the burden of proof as to causation at trial, Broulim's could carry its initial burden as the movant on summary judgment by establishing "the absence of sufficient evidence" that the door at Broulim's fractured the screw. "Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking." *Antim v. Fred Meyer Stores, Inc.*, 150 Idaho 774, 776, 251 P.3d 602, 604 (Ct. App. 2011). Broulim's satisfied its initial burden by doing two things. First, it submitted Holdaway's medical records and demonstrated that they do not support the allegation that the door at Broulim's caused the screw in Holdaway's leg to fracture. Second, it successfully moved to strike the only statements in the record addressed to causation.

Affidavits submitted in support of or in opposition to a motion for summary judgment must be admissible under the Idaho Rules of Evidence. I.R.C.P. 56(e). "The admissibility of the evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold question to be answered before applying the liberal construction and reasonable inferences rule to determine whether the evidence is sufficient to create a genuine issue for trial." *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 13, 175 P.3d 172, 175 (2007). As evidence regarding causation, Holdaway cited (1) his own statements regarding what Dr. Mills allegedly told him about the likely cause of the fractured screw, and (2) his own statements that the door caused the screw to fracture. In each case, the district court correctly held that the evidence was not admissible.

As to the first, the district court held that Holdaway's testimony concerning the content of conversations he allegedly had with Dr. Mills is inadmissible hearsay. "'Hearsay' is a statement,

5

other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c). Holdaway used statements he attributed to Dr. Mills to argue that the alleged incident at Broulim's was the likely cause of the fractured screw, and does not suggest any other function that might be served by his testimony regarding his conversations with Dr. Mills. "Hearsay is not admissible except as provided by [the Idaho Rules of Evidence] or other rules promulgated by the Supreme Court of Idaho." I.R.E. 802. Holdaway did not identify any rule that would permit the admission of the otherwise inadmissible hearsay. *See Foberg v. Harrison*, 71 Idaho 11, 16, 225 P.2d 69, 71–72 (1950) (holding that a plaintiff's testimony as to what her doctor told her about the nature and extent of her injuries was clearly hearsay and inadmissible).

Second, Holdaway cited statements that he made in various affidavits opining that the door at Broulim's caused the screw to fracture. The district court held that while "Holdaway may testify as to the pain he feels, where the door allegedly hit his leg, and the sequence of events, he may not set forth any opinion as to the cause of the injury that would require medical knowledge outside of the 'usual and ordinary experience of the average person.'" According to the district court, "[t]estifying about the cause and effect of alleged damage to titanium materials not only goes beyond Holdaway's demonstrated knowledge and experience, but also beyond that of an average person." Once again, the district court did not err.

Because Holdaway was not testifying as an expert, Rule 701 of the Idaho Rules of Evidence governs the admissibility of his testimony as to the cause of the fractured screw and the resulting medical complications. Rule 701 provides that a lay witness may offer his opinions or inferences so long as they "are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." I.R.E. 701. "Under I.R.E. 701 and 702, a court has discretion to determine whether to allow a lay witness to express an opinion relating to causation." *Bloching v. Albertson's, Inc.*, 129 Idaho 844, 846, 934 P.2d 17, 19 (1997). However,

> [w]here the subject matter regarding the cause of disease, injury, or death of a person is wholly scientific or so far removed from the usual and ordinary experience of the average person that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of death, disease or physical condition.

*Evans v. Twin Falls Cnty.*, 118 Idaho 210, 214, 796 P.2d 87, 91 (1990) (quoting 31A Am. Jur. 2d *Expert and Opinion Evidence* § 158). On the other hand, "[w]hen alleged injuries are of a common nature and arise from a readily identifiable cause, there is no need for the injured party to produce expert testimony." *Dodge-Farrar v. Am. Cleaning Servs. Co.*, 137 Idaho 838, 842, 54 P.3d 954, 958 (Ct. App. 2002).

> For example, if a person fell down some steps, landing on a knee, and immediately thereafter felt pain in the knee, saw an open wound on the knee, and within minutes or hours observed that the knee was swelling, that layperson could provide reliable testimony that the pain, wound and swelling were caused by the fall. A layperson could also testify that medical care obtained to treat those immediate symptoms was causally related to the fall. As the claimed symptoms and treatment become more separated in time from the fall, however, the causal relationship becomes more doubtful and tenuous, and expert testimony becomes necessary to establish causation. As time passes, the possibility that prior or subsequent injuries or unrelated disease processes may play a causal role makes lay opinion unreliable and inadequate to sustain a claim. Accordingly, lay testimony on causation must be limited to the symptoms which are proximate enough to the injury that lay opinion can be deemed competent and reliable. Just where within the time continuum the line must be drawn to exclude lay testimony is necessarily a decision committed to the trial court's discretion based upon the facts and circumstances of the particular case. In addition, even as to symptoms that appear immediately after the traumatic event, lay opinions may be foreclosed if the causation question is not a matter within the common knowledge and experience of the average person. Thus, in the foregoing hypothetical, a layperson might be precluded from testifying that a skin rash which appeared on her arms immediately after the fall was causally related to the fall.

*Id.* at 842–43, 54 P.3d at 958–59 (holding that a district court abused its discretion by excluding a lay plaintiff's testimony that a fall caused immediate pain, swelling, and difficulty walking, but that the district court properly excluded the plaintiff's testimony that the same fall caused a permanent ankle deformity).

Importantly, the injury about which Holdaway complains is not the pain and swelling that immediately followed the incident, but the fractured screw diagnosed roughly two months later and the medical complications allegedly resulting from the fractured screw diagnosed well after that. Though Holdaway might have been competent to testify that the malfunctioning door caused pain and swelling in the hours, or perhaps days, immediately following the incident, he is not competent to testify as to the cause of the fractured screw and the medical complications. Holdaway acknowledges that he forgot about the incident at Broulim's and did not come to think that the door caused the fractured screw until Dr. Mills allegedly told him roughly two months later that it must have been caused "from a hard hit from the side." Until then, Holdaway

7

attributed discomfort in his surgically repaired leg to the fall he took on stairs leading to his apartment the weekend after the incident at Broulim's. Holdaway, it appears, did not find the door to be a "readily identifiable" cause of the fractured screw. More generally, and unlike the immediate pain and swelling that may have resulted in the hours immediately following the incident, the fractured screw is not an injury of a common nature that can be diagnosed and attributed to a particular event absent expertise.

"Although the Idaho Rules of Evidence do not require expert testimony to establish causation in medical malpractice cases, such testimony is often necessary given the nature of the cases. Expert testimony is generally required because the causative factors are not ordinarily within the knowledge or experience of laymen composing the jury." *Coombs v. Curnow*, 148 Idaho 129, 140, 219 P.3d 453, 464 (2009) (internal quotation marks and citations omitted). Though this is not a medical malpractice case, the same considerations apply. Where an issue is "far removed from the usual and ordinary experience of the average person. . . . [a] jury, comprised of lay people, is simply not qualified to determine that issue without the assistance of expert testimony . . . ." *Swallow v. Emergency Med. of Idaho, P.A.*, 138 Idaho 589, 598, 67 P.3d 68, 77 (2003). The district court properly held that "the cause and effect of alleged damage to titanium materials . . . goes beyond [the knowledge and experience] . . . of an average person."

Here, there is no expert testimony of any sort to support an inference that the door at Broulim's caused the screw to fracture. Holdaway submitted no admissible evidence regarding the conditions under which the proximal screw would be likely to fracture. Likewise, he submitted no evidence to support the claim that the screw would be unlikely to fracture in the fall he acknowledges having taken on the stairs to his apartment. The only admissible evidence to support the allegation that the incident at Broulim's caused the screw to fracture is the fact that Holdaway complained to Dr. Mills of pain and swelling approximately a month after the incident and Dr. Mills diagnosed the fractured screw approximately a month after that. The fact that the purported cause of a medical condition occurred before the condition was diagnosed is insufficient evidence alone to resist summary judgment as to whether the purported cause is not merely purported. *See Bloching*, 129 Idaho at 846, 934 P.2d at 19 (holding that testimony that the number and intensity of plaintiff's seizures increased after beginning a new insulin regimen was insufficient to resist summary judgment as to whether the regimen caused the seizures). That is particularly so where, as here, a significant period of time passed between the purported cause of

8

the medical condition and the diagnosis of that condition. In such a case, "the possibility that prior or subsequent injuries or unrelated disease processes may play a causal role makes lay opinion unreliable and inadequate to sustain a claim." *Dodge-Farrar*, 137 Idaho at 842–43, 54 P.3d at 958–59.

Broulim's carried its burden as the movant on summary judgment by introducing Holdaway's medical records; by showing that those records never mention any incident at Broulim's and do not speculate in the least about the conditions under which the screw in Holdaway's leg was likely fractured or would likely fracture; by showing that the records mention another, unrelated incident that may have caused the damage to the screw; and, by successfully moving to strike the only evidence submitted by Holdaway intended to support causation. The mere fact that the fractured screw was diagnosed approximately two months after the incident at Broulim's does not provide evidence sufficient to resist summary judgment as to whether the incident caused the screw to fracture. Because Broulim's carried its burden as the movant on summary judgment, Holdaway could "not rest upon the mere allegations or denials of . . . [his] pleadings," but was required to respond with admissible evidence "set[ting] forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e). Instead, Holdaway submitted additional inadmissible evidence and relied on the allegations in his complaint. The district court did not err in granting summary judgment in favor of Broulim's.

## IV.
## CONCLUSION

We affirm the judgment of the district court. Costs are awarded to Broulim's.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.

9