# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34185

KENNETH E. THOMSON, )
                                 )        **Boise, November 2008 Term**
           Plaintiff/Appellant, )
v.                                )        **2009 Opinion No. 46**
                                       )
CRAIG OLSEN, M.D. , )       **Filed: April 3, 2009**
                                       )
          Defendant/Respondent. )       **Stephen W. Kenyon, Clerk**
                                       )

Appeal from the Fourth Judicial District of the State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

The decision of the district court is <u>affirmed.</u> Respondent's request for attorney fees is denied. Costs are awarded to Respondent on appeal.

Morrow, Dinius & Fischer, LLC, Nampa, for appellant. Dennis P. Wilkinson argued.

Hall, Farley, Oberrecht & Blanton, Boise, for respondent. Richard E. Hall argued.

---

W. JONES, Justice

## NATURE OF CASE

Kenneth Thomson (Appellant) filed a lawsuit alleging that Dr. Craig Olsen (Respondent) committed medical malpractice. The jury returned a verdict for Respondent, concluding he did not breach the applicable standard of care in his treatment of Appellant. On appeal, Appellant argues the district court committed error by 1) allowing Respondent's counsel to ask potential jurors to rate themselves on a sympathy scale during voir dire, 2) allowing Respondent's undisclosed witness to testify, 3) excluding email evidence, 4) admitting consent form evidence, and 5) allowing Respondent to present the "known complication" defense.

## FACTUAL AND PROCEDURAL BACKGROUND

In late December 2002, Appellant underwent shoulder surgery. An MRI taken after the surgery revealed a small benign pericardial cyst inside Appellant's chest. Appellant elected to have surgery to remove the cyst and Respondent performed the elective surgery in February

1

2003 in Boise, Idaho. After the surgery, Appellant was diagnosed with a paralyzed left hemidiaphragm. Treating physicians believed the damage to Appellant's hemidiaphragm was caused by injury to Appellant's phrenic nerve during the cyst removal surgery performed by Respondent.

In 2005, Appellant filed a complaint against Respondent alleging medical malpractice. Prior to trial, Appellant filed a motion in limine requesting, among other things, that Respondent be barred from mentioning the consent form that Appellant signed before surgery. The consent form states in relevant part, "The need, the nature of the procedure, the alternatives available, and the reasonable risks related to this procedure were explained to me to my full satisfaction, by the above-named [Dr. Craig Olsen]." Appellant also filed a motion in limine to prevent Respondent from referring in any manner to damage to the phrenic nerve being a "known complication" of the surgery until adequate foundation was laid. The district court denied both motions.

During voir dire Respondent's counsel asked several jurors how they would rate themselves on a scale measuring sympathy. Appellant's counsel did not object until Respondent's counsel asked the question of the third venireperson. The court overruled the objection.

Prior to trial, Appellant's expert witness, Dr. Shuman, a thoracic surgeon from California, gave a deposition during which he explained how he became familiar with the applicable standard of care in Boise, Idaho. Specifically, Dr. Shuman stated that he had a telephone conversation with Dr. Cushman, a physician in Boise, Idaho, and they had a discussion about who was doing thoracic surgery in Boise. During the deposition Dr. Shuman stated he believed Dr. Cushman was a general and vascular surgeon and that Dr. Cushman had indicated to him that if an injury occurred to the phrenic nerve in a situation similar to the one at issue, it would be beneath the standard of care.

Respondent filed a motion in limine to exclude Dr. Shuman's expert testimony on the basis that he was not adequately familiar with the applicable standard of care for a thoracic surgeon practicing in Boise, Idaho in February 2003. The district court denied Respondent's motion, but suggested Respondent could move to exclude Dr. Shuman as an expert witness if Dr. Shuman failed to establish that he was adequately familiar with the applicable standard of care during his testimony at trial.

2

During trial Dr. Shuman testified beyond the scope of what he revealed in his deposition as to what he learned from Dr. Cushman during their telephone conversation about the local standard of care. Specifically, Dr. Shuman testified that Dr. Cushman told him he was familiar with pericardial cyst removal surgery, he had assisted in thoracoscopic procedures, he was a vascular surgeon, and he was familiar with the standard of care for a thoracic surgeon practicing in Boise, Idaho in February 2003.

In response, Respondent filed an affidavit of Dr. Cushman, wherein Dr. Cushman stated he was not a vascular or thoracic surgeon, but rather he was a general surgeon whose practice focused on colon and rectal surgery. Dr. Cushman also stated that he was not familiar with the standard of care for a thoracic surgeon practicing in Boise, Idaho in February 2003. Additionally, Dr. Cushman stated that he never told Dr. Shuman anything to the contrary.

Respondent then moved to strike Dr. Shuman's testimony and to dismiss the lawsuit based on Dr. Shuman's failure to familiarize himself with the applicable standard of care. The district court denied Respondent's motions, explaining that it was up to the jury to determine whether Dr. Shuman testified truthfully. The court also ruled that Respondent would be permitted to call Dr. Cushman as an impeachment witness to discredit Dr. Shuman's testimony.

Respondent then called Dr. Cushman to impeach Dr. Shuman's testimony. Appellant objected to Dr. Cushman's testimony at trial on the ground that Respondent did not disclose Dr. Cushman as a witness by the district court's pretrial deadline for expert witness disclosure. The court overruled the objection and permitted Dr. Cushman to be called as an impeachment witness, but warned that his testimony would need to be "quite limited" because he was not being called as an expert witness. The court reiterated that evaluating the credibility of Dr. Shuman and Dr. Cushman was a task reserved for the trier of fact. Dr. Cushman's trial testimony was consistent with what he stated in his affidavit.

Appellant called Dr. Cushman's secretary, Bonnie Lee (Ms. Lee), to testify in an attempt to impeach Dr. Cushman's testimony that he never discussed the local standard of care with Dr. Shuman. Appellant moved to admit Exhibits 85 and 86 during Ms. Lee's testimony. Exhibit 85 is an email with attachments sent from Appellant's counsel to Ms. Lee. The email states, in relevant part, "Bonnie: I have attached the Operative Report, the Mayo Clinic Report and the C.V. of Dr. Shuman. Dr. Cushman would potentially talk by telephone with Dr. Shuman regarding the surgical case…Dr. Shuman simply needs to talk with Dr. Cushman and see what

he thinks of the phrenic nerve compromise that caused the paralyzed diaghram [sic] in this unfortunate fellow." Exhibit 86 is an email response from Ms. Lee to Appellant's counsel that includes the text of Exhibit 85 and also states in relevant part, "Dr. Cushman reviewed all the information you sent and has agreed to do this." Ms. Lee stated that she did not have an independent recollection of Exhibit 85. Appellant attempted to refresh Ms. Lee's recollection. The district court ultimately excluded Exhibit 85 from evidence. The court admitted Exhibit 86, but required any portion of Exhibit 86 containing Exhibit 85 to be redacted.

During trial Appellant testified that Respondent never discussed with him the risks associated with the surgery. To impeach Appellant's testimony, Respondent successfully moved to admit the consent form that Appellant signed prior to the surgery.

Over Appellant's objection the court also admitted Respondent's expert witness testimony of four thoracic surgeons, including that of Respondent Dr. Olsen, that damage to the phrenic nerve was a known complication of the surgery at issue.

The jury returned a verdict for Respondent, finding that he did not breach the applicable standard of care in his treatment of Appellant. Appellant raises five evidentiary issues on appeal. Respondent requests attorney fees and costs on appeal.

## ISSUES ON APPEAL

The following issues are presented to this Court on appeal:

    a. Was it an abuse of discretion for the district court to allow the defense to inquire about sympathy during voir dire?

    b. Was it an abuse of discretion for the district court to allow Dr. Cushman to testify?

    c. Did the district court err in excluding Exhibit 85 and portions of Exhibit 86 from evidence?

    d. Was it an abuse of discretion for the district court to admit the consent form into evidence?

    e. Was it an abuse of discretion for the district court to allow Respondent to present the "known complication" defense?

    f. Is Respondent entitled to attorney fees and costs on appeal?

## STANDARD OF REVIEW

On appeal, this Court reviews the trial court's selection of jurors for an abuse of discretion. *State v. Luke*, 134 Idaho 294, 298, 1 P.3d 795, 799 (2000) (citing *Morris ex rel. Morris v. Thomson*, 130 Idaho 138, 141, 937 P.2d 1212, 1215 (1997)). Likewise, when reviewing a trial court's evidentiary rulings, this Court applies an abuse of discretion standard. *Edmunds v. Kraner*, 142 Idaho 867, 871, 136 P.3d 338, 342 (2006) (citing *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163-64, 45 P.3d 816, 819-20 (2002)). Error is disregarded unless the ruling is a manifest abuse of the trial court's discretion and affects a substantial right of the party. *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000) (citing *Burgess v. Salmon River Canal Co.*, 127 Idaho 565, 574, 903 P.2d 730, 739 (1995)). In determining whether a trial court abused its discretion, the sequence of inquiry is: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by the exercise of reason. *Weeks v. Eastern Idaho Health Services*, 143 Idaho 834, 837, 153 P.3d 1180, 1183 (2007) (citing *Athay v. Stacey*, 142 Idaho 360, 366, 128 P.3d 897, 903 (2005)).

## ANALYSIS

**It was not an abuse of discretion for the district court to allow the defense to inquire about sympathy during voir dire.**

Appellant argues that it was improper for the district court to allow Respondent to ask potential jurors to rate themselves on a scale of sympathy during voir dire. Appellant did not object to the questioning until Respondent asked the question of the third venireperson. Respondent argues he inquired about sympathy as a means to eliminate juror bias. The venireperson who was asked the question to which Appellant objected did not ultimately serve on the jury.

The voir dire examination is under the supervision of the court and subject to such limitations as the court may prescribe in the furtherance of justice and the expeditious disposition of the case. I.R.C.P. 47(i). As noted above, the decision whether a juror can render a fair and impartial verdict is directed to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Yager*, 139 Idaho 680, 688, 85 P.3d 656, 664 (2004); *see also Morris*, 130 Idaho at 141, 937 P.2d at 1215. Moreover, "It is entirely proper for counsel to

5

ask the jurors such questions as may reasonably be necessary to ascertain whether they are free from a bias or interest that may affect their verdict." *Harris v. Alessi*, 141 Idaho 901, 906, 120 P.3d 289, 294 (Ct. App. 2005) (citation omitted).

In this case, the district court properly recognized that its ruling on Appellant's objection during voir dire was squarely within the province of its discretion. In overruling Appellant's objection to Respondent's question, the court acted within the outer boundaries of its discretion and consistently with the applicable legal standards by allowing counsel to attempt to uncover potential biases in jurors. The court reached its decision through an exercise of reason by recognizing that counsel must be given some latitude to reveal partiality within the jury pool.

This is not to be taken as an endorsement of the use of rating scales during voir dire, but in this particular case there has not been a showing that the district court abused its discretion by allowing Respondent to inquire about sympathy during voir dire. Accordingly, we hold the district court did not abuse its discretion.

**It was not an abuse of discretion for the district court to allow Dr. Cushman to testify.**

Appellant argues it was error for the district court to allow Dr. Cushman to testify because he was not disclosed as a possible witness until after trial commenced, thereby missing the discovery deadline set by the court. However, there was no order by the district court requiring disclosure of witnesses other than expert witnesses. Pursuant to I.R.C.P. 16(e)(6)(J) and I.R.C.P. 16(h), impeachment witnesses need not be disclosed prior to trial. Dr. Cushman was called as an impeachment witness. The court made it very clear that Dr. Cushman was "not being called as an expert to testify or give an opinion about whether or not Dr. Olsen did or did not violate the standard of care" and consequently his testimony would need to be "quite limited." Dr. Cushman's testimony was limited to the subjects of his telephone conversation with Dr. Shuman and what kind of surgery Dr. Cushman practiced. His impeachment testimony was well within the boundaries set by the court. Therefore, Respondent had no duty to disclose Dr. Cushman as a witness prior to trial.

The district court was aware that this was an issue of discretion, it acted within the boundaries of its discretion by weighing the potential prejudice to each party and strictly limiting Dr. Cushman to testify as a lay witness as to facts in dispute regarding his telephone conversation with Dr. Shuman, and it articulated its reasoning for the ruling. We affirm the district court's ruling allowing Dr. Cushman's limited impeachment testimony into evidence.

6

**The district court did not err in excluding Exhibit 85 and portions of Exhibit 86 from evidence.**

Appellant contends the district court improperly excluded from evidence Exhibit 85, an email with attachments sent from Appellant's counsel to Ms. Lee, and part of Exhibit 86, the portion of the email response from Ms. Lee to Appellant's counsel that contained Exhibit 85.[1]

Appellant was required to prove as an essential part of his case that when Respondent was removing Appellant's pericardial cyst, Respondent negligently failed to meet the standard of care for thoracic surgeons performing that surgery in Boise, Idaho, in December 2002. I.C. § 6-1012. Appellant called Dr. Shuman as his medical expert to testify that Respondent negligently failed to meet that standard of care. To do so, Dr. Shuman had to be able to testify that he had actual knowledge of that standard of care. I.C. § 6-1013. He testified that he learned of the standard during a telephone conversation with Dr. Cushman.

Respondent then called Dr. Cushman as a witness. He testified that he was a general surgeon, not a thoracic surgeon, that he had not performed or even assisted in chest surgeries during his twenty-five years in Boise, that he did not know the applicable standard of care for a thoracic surgeon removing a pericardial cyst in Boise, Idaho, in December 2002, and that he had not told Dr. Shuman that he did know the standard of care.

During cross-examination by Appellant's counsel, Dr. Cushman stated that he had not reviewed any records of this particular case, that he had not reviewed the curriculum vitae of Dr. Shuman, and that he had not reviewed any records from the Mayo Clinic. Appellant's counsel then offered into evidence an affidavit, which included attached Exhibits 85 and 86. The district court excused the jury to discuss the matter with counsel. Appellant's counsel stated that he intended to impeach Dr. Cushman's testimony about what he had reviewed or had not reviewed prior to talking with Dr. Shuman. To do so, he intended to use an email sent to Ms. Lee at Dr. Cushman's office, a responding email from Ms. Lee, and the testimony of Ms. Lee. The jury was brought back in, and Respondent's counsel continued cross-examining Dr. Cushman. During that examination, Dr. Cushman testified that he could not recall whether he had reviewed any documents before talking with Dr. Shuman.

---

[1] The excluded evidence did not include the attachments to the original email, namely the Operative Report, the Mayo Clinic Report and the C.V. of Dr. Shuman, but such attachments were identified in the body of the original email.

Appellant's counsel then called as a witness Ms. Lee, who worked in Dr. Cushman's office. She testified that she did not have any independent recollection of receiving an email from the office of Appellant's counsel. She was then handed Exhibit 85, a copy of the email. When asked whether the email refreshed her memory, she answered, "You know, I think I do remember something from this Dr. Shuman, but I probably just gave it directly to Dr. Cushman." On further questioning, she stated that she could not remember receiving the email, that she would think she placed the documents mentioned in the email on Dr. Cushman's desk, and that she could not recall what documents came with the email or whether she did place them on Dr. Cushman's desk. Appellant's counsel then offered Exhibit 85 into evidence, stating, "Your Honor, I offer that document to refresh her memory." The court responded that Appellant's counsel could ask her whether it had refreshed her memory. Appellant's counsel asked Ms. Lee, "It has not refreshed your memory?" She answered, "No, no." The court then refused to admit Exhibit 85.

It is evident from the record that the only legal theory advanced by trial counsel in support of the offer of Exhibit 85 was for the purpose of refreshing Ms. Lee's memory.[2] This is governed by I.R.E. 612(a), which states, "If while testifying, a witness uses a writing or object to refresh the memory of the witness, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying." Appellant called Ms. Lee as a witness. Assuming Ms. Lee used Exhibit 85 to refresh her memory, then "an adverse party," in this case Respondent, was entitled to have the writing produced at the trial. I.R.E. 612(c) provides, "A party entitled to have a writing…produced under this rule is entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."

The Idaho Court of Appeals provided an excellent analysis of the permissible use of documents for purposes of refreshing the recollection of a witness in *Baker v. Boren*, 129 Idaho 885, 934 P.2d 951 (Ct. App. 1997):

> First, the witness must exhibit the need to refresh his or her memory and, second, the witness must confirm that the notes will assist in refreshing his or her memory. *Hall v. American Bakeries Co.*, 873 F.2d 1133, 1136 (8th Cir. 1989). The witness may not testify directly from the notes, but can use them to assist in

---

[2] Apparently there was confusion by the parties on this point because Appellant and Respondent on appeal frame the issue as whether there was a proper foundation laid for Exhibit 85, despite the clear indication in the record that the evidence was offered to refresh Ms. Lee's recollection and no foundation objection was made.

recollection. *Id.* The purpose of Fed.R.Evid. 612 is "to promote the search of credibility and memory." Fed.R.Evid. 612, advisory committee's notes (1972). The court must ensure that the witness actually has a present recollection and is not to allow inadmissible evidence to inadvertently slip in for its truth. *See 20th Century Wear, Inc., v. Sanmark-Stardust, Inc.*, 747 F.2d 81, 93 n.17 (2d Cir. 1984). Two safeguards have been devised for this purpose. *Id.* First, the district court has broad discretion in determining whether the witness is truly using the writing to refresh his or her memory, or whether he or she is effectively offering the writing for its truth. *United States v. Rinke*, 778 F.2d 581, 587 (10th Cir. 1985); *United States v. Baratta*, 397 F.2d 215, 222 (2d Cir. 1968). *See also 20th Century Wear, supra.* Second, Fed.R.Evid. 612 gives opposing counsel the right to inspect at trial whatever is used to refresh recollection, to cross-examine the witness on it and to introduce relevant portions into evidence. *20th Century Wear, supra.*

129 Idaho at 892, 934 P.2d at 958.

In this case, the party entitled to have Exhibit 85 produced was Respondent, and it was therefore Respondent, not Appellant, who was entitled to introduce into evidence those portions of Exhibit 85 which related to the testimony of Ms. Lee. The district court did not err in holding that Appellant could not introduce Exhibit 85 into evidence on the basis that it was used to refresh the testimony of Appellant's witness, Ms. Lee.

We also address Appellant's comment during trial that he intended to use Exhibit 85 to impeach Dr. Cushman. Despite Appellant's comment, it was not offered for that purpose. If a person objecting to the admission of evidence states one ground for objection in the trial court, which is overruled, we will not consider on appeal whether a different objection would have been sustained. As we stated in *Slack v. Kelleher*, 140 Idaho 916, 104 P.3d 958 (2004) (citations omitted):

> For an objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated, or the basis of the objection must be apparent from the context. An objection to the admission of evidence on one basis does not preserve a separate and different basis for excluding the evidence.

140 Idaho at 921, 104 P.3d at 963.

On appeal, we review whether the trial court erred. If the objection is made on a specific ground, the trial court is simply asked to decide whether that particular objection is a valid reason for excluding the evidence. If the trial court correctly overrules that objection, it has not erred. If the objecting party made the wrong objection, that is not error by the trial court. When

9

an objection is made, the trial court is only asked to determine the validity of that objection; it is not asked to determine whether there is another objection that would have been sustained had it been made.

The same rule should apply when a party offers evidence for a specific reason. Appellant's counsel offered Exhibit 85 to refresh the memory of Ms. Lee. It is not admissible for that purpose. Appellant should not be permitted to argue on appeal that it would have been admissible on some other basis, because the trial court was never asked to rule upon that other basis.

Appellant also argues on appeal that the evidence was admissible under I.R.E. 803(6), which excludes records of regularly conducted activity from the hearsay rule. This argument also fails because Appellant did not advance this theory of admissibility at trial and may not now assert the argument on appeal. Even if Appellant had properly advanced this argument the evidence would not have been admissible because although Ms. Lee may have been competent to testify regarding records of regularly conducted activity in Dr. Cushman's office, there is nothing indicating she was competent to testify regarding such records made by and kept in the office of Appellant's counsel.[3] Exhibit 85 was created by Appellant's counsel and printed from a computer in his office. Ms. Lee was not asked any questions which would lay foundation for the admission of Exhibit 85 under Rule 803(6). Therefore, it was not admissible under that rule.

Accordingly, we affirm the district court's decision to exclude from evidence Exhibit 85 and the relevant portions of Exhibit 86 under I.R.E. 612.

**It was not an abuse of discretion for the district court to admit the consent form into evidence.**

Appellant filed a motion in limine to prevent Respondent from mentioning during trial the consent form that Appellant signed before he underwent the surgery at issue. The district court denied the motion and postponed making a determinative ruling until its relevance became clear at trial, but the court acknowledged that written consent does not allow a medical expert to contract out of the standard of care. The court also noted it would give a curative instruction to the jury to the extent that there might be an improper suggestion that the patient consented to

---

[3] To be admissible under I.R.E. 803(6) as a record of regularly conducted activity in Dr. Cushman's office, Ms. Lee would have to testify that she was the custodian of the record, which she was not, that it was the regular practice of Dr. Cushman's office to make that record, which it did not make, and that the record was kept in the course of the regularly conducted business activity of Dr. Cushman's office, which it was not. It was made and kept by Appellant's counsel.

malpractice.[4]    The court ultimately allowed the consent form into evidence to impeach Appellant's testimony that he was not aware of the risks of the surgery.  Appellant complains that the consent form should not have been admitted into evidence because it may have improperly suggested to the jury that consent was at issue.

Appellant could not cite to any portion of the record where Respondent improperly suggested Appellant consented to negligence.  Instead, the record shows that Appellant opened the door for Respondent to offer evidence and testimony regarding informed consent by testifying that Respondent never discussed with Appellant the risks associated with the surgery.  Idaho law is well established that "one may not successfully complain of errors one has consented to or acquiesced in.  In other words, invited errors are not reversible."  *State v. Caudill,* 109 Idaho 222, 226, 706 P.2d 456, 460 (1985).  "The doctrine of invited error applies to estop a party from asserting an error when his own conduct induces the commission of the error."  *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993) (citation omitted).  Under the doctrine of invited error, Appellant's argument fails because he invited the court to admit the consent form evidence when he testified that Dr. Olsen did not discuss the risks of surgery with him.

Here the district court recognized its discretion to admit or exclude the evidence.  By waiting to rule on Appellant's motion to exclude the evidence until its relevance became clear during trial and then admitting the consent form to rebut Appellant's testimony, the court acted within the outer boundaries of its discretion and consistently with applicable legal standards.  The court reached its decision through an exercise of reason by evaluating the options available to it and determining that it would not be reasonable to exclude the consent form after Appellant testified that he was not aware of the risks of surgery.  The district court did not abuse its discretion.  Thus, we affirm the district court's ruling admitting the consent form into evidence.

**It was not an abuse of discretion for the district court to allow Respondent to present the "known complication" defense.**

Appellant filed a motion in limine to prevent Respondent from mentioning known complications of the surgery until Respondent laid adequate foundation to present the evidence.  The district court found that Appellant's motion was overly broad and denied it.  During trial, Respondent offered evidence through the testimony of four expert witnesses that damage to the

---

[4] The record does not reflect that Appellant requested such an instruction at any point during the trial.

phrenic nerve was a known complication of pericardial cyst removal.  In Idaho, the test for determining whether a witness is qualified as an expert is not rigid, *Weeks*, 143 Idaho at 837, 153 P.3d at 1183, and can be found in I.R.E. 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The question under the evidence rule is simply whether the expert's knowledge will assist the trier of fact, not whether the information upon which the expert's opinion is based is commonly agreed upon.  *Weeks*, 143 Idaho at 838, 153 P.3d at 1184 (*citing State v. Merwin*, 131 Idaho 642, 646, 962 P.2d 1026, 1030 (1998)).

On appeal, Appellant argues there was a total lack of foundation for this evidence because not one of Respondent's expert witnesses pointed to specific language in a treatise, textbook, or article that supported the notion that damage to the phrenic nerve was a known complication of the surgery at issue.  Respondent contends the testimony of each witness was based upon scientific knowledge, many years of experience in thoracic surgery, and experience and familiarity with the phrenic nerve in the context of thoracic surgery.

There is ample support in the record to affirm the district court's decision to admit Respondent's expert testimony, despite the lack of specific language in medical literature on the subject.  Dr. Olsen, the thoracic surgeon who performed Appellant's procedure, testified that there was a risk of injury to the phrenic nerve in the surgery at issue because of its proximity to the cyst.  Dr. Wood, an experienced thoracic surgeon, testified that he teaches residents who are being trained in thoracic surgery that injury to the phrenic nerve is a common risk of thoracic procedures.  Further, he is responsible for credentialing and examining thoracic surgeons as part of his position with the American Board of Thoracic Surgery and an examinee would potentially fail his or her board examination if he or she contended that the phrenic nerve was not a structure at risk for injury during a thoracic procedure.  Dr. Wood also relied on medical literature in support of his opinions, though during trial and on appeal Appellant makes much of the fact that none of the medical literature presented by Respondent contains the precise language, "damage to the phrenic nerve is a known complication of pericardial cyst removal surgery."  Dr. Symmonds is a thoracic and vascular surgeon in Boise, Idaho and he testified that Appellant's phrenic nerve was immediately adjacent to the cyst during a surgery such as the one at issue and

the phrenic nerve would be at risk. Dr. Orme is a cardiovascular and thoracic surgeon who assisted in plaintiff's surgery and he also testified that there could be a risk of injury to the phrenic nerve in the surgery at issue.

It is clear that the testimony of each expert witness was based on their individual knowledge, skill, experience, training, and education in thoracic surgery and therefore the testimony that each presented satisfied the requirements of I.R.E. 702 and was supported by adequate foundation. The testimony goes to the weight, not admissibility, of the evidence. Moreover, the testimony was useful to jurors in determining a fact in issue and interpreting evidence.

The district court recognized its discretionary role in admitting the evidence. It acted within the outer boundaries of its discretion and consistently with applicable legal standards by ensuring that each expert was adequately qualified to provide expert testimony. The court based its decision on an exercise of reason by not strictly and unreasonably limiting the testimony to opinions that were printed in medical treatises, but rather were based on their knowledge, skill, experience, training, and education. Accordingly, we affirm the district court's decision to admit Respondent's expert witness testimony that damage to the phrenic nerve was a known complication of the surgery at issue.

**Respondent is not entitled to attorney fees on appeal, but Respondent is entitled to costs on appeal.**

Respondent requests attorney fees on appeal pursuant to I.C. § 12-121. Attorney fees can be awarded on appeal under I.C. § 12-121 only if the appeal was brought or defended frivolously, unreasonably, or without foundation. *Teton Peaks Inv. Co., LLC v. Ohme*, 146 Idaho 394, __, 195 P.3d 1207, 1212 (2008). Because the district court excluded Exhibit 85 on incorrect grounds, we cannot say this appeal was brought frivolously, unreasonably, or without foundation. Accordingly, we deny Respondent's request for attorney fees on appeal.

Respondent requests costs on appeal pursuant to I.A.R. 40, which states in relevant part, "Costs shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." Respondent is the prevailing party in this case; therefore, we award costs to Respondent on appeal.

### CONCLUSION

13

Each issue raised in this appeal was a question of whether the district court abused its discretion in admitting or excluding evidence during trial. Appellant failed to demonstrate an abuse of discretion by the court as to any of its evidentiary rulings. Accordingly, we affirm the district court on all issues raised by Appellant. We deny Respondent's request for attorney fees and award costs to Respondent on appeal.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON **CONCUR.**