**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52723**

| | |
|---|---|
| JULIE DELANO, LYNN FRANCK, NICK NICKOLOFF and MARY LEE NICKOLOFF, husband and wife; LAURA SPENCER, TIM ROBERTS and JOYCE ROBERTS, husband and wife; HAROLD BRITAIN and PAULETTE BRITAIN, husband and wife; ALTON HOWELL and ARLENE HOWELL, husband and wife; LARRY DALKE and YVONNE DALKE, husband and wife; RONALD SIKORA and TINA SIKORA, husband and wife; and SALLY GRABOSKI, | Opinion Filed: December 10, 2025 <br><br> Melanie Gagnepain, Clerk |

Plaintiffs-Appellants,

and

JOHN HENGESH and CHARLENE HENGESH, husband and wife; TOM IVERSON and TRACY IVERSON, husband and wife; and BRADLEY LINK and DIANE LINK, husband and wife,

Plaintiffs,

v.

JEFFREY PIKE and LISA PIKE, husband and wife,

Defendants-Respondents.

---

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Lamont C. Berecz, District Judge.

Judgment dismissing complaint, <u>affirmed</u>.

Davillier Law Group, LLC; Allen J. Shoff, Sandpoint, for appellants. Daniel L. Rodriguez argued.

Hickey Law Firm, PLLC; Josh Hickey, Sandpoint, for respondents. Josh Hickey argued.

---

1

HUSKEY, Judge

Julie Delano, Lynn Franck, Nick Nickoloff, Mary Lee Nickoloff, Laura Spencer, Tim Roberts, Joyce Roberts, Harold Britain, Paulette Britain, Alton Howell, Arlene Howell, Larry Dalke, Yvonne Dalke, Ronald Sikora, Tina Sikora, and Sally Graboski ("Homeowners")[1] appeal from the district court's judgment holding that their subdivision's covenants, conditions, and restrictions ("CC&Rs") do not prohibit Jeffrey Pike and Lisa Pike (the "Pikes") from operating platform-based, short-term rentals of their property. We hold the district court did not err in finding that paragraph 6 of the CC&Rs does not prohibit short-term rentals of residential property.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

All parties in this case are homeowners in Swan Shores, a neighborhood consisting of thirty lots. The neighborhood was platted in 1979; the original CC&Rs were adopted in 1979 and amended in 1980. The Pikes have, from time to time, listed their home on Airbnb as a short-term rental. When the Pikes listed their home for sale, several neighbors were concerned that the real estate listing indicated the home could be rented out as a vacation rental. Homeowners wished to prevent the Pikes from offering their home as a short-term rental and filed a complaint for declaratory relief. At issue is paragraph 6 of the CC&Rs, which reads: "No commercial enterprises shall be conducted upon said real property. This shall not prevent the private renting of a dwelling on any lot."

Both parties filed motions for judgment on the pleadings arguing paragraph 6 is plain and unambiguous. Homeowners argued the plain meaning of paragraph 6 prohibits the commercial short-term rentals of the Pikes' property. The Pikes argued the plain language of paragraph 6 permits the short-term rentals of their property. The Pikes also request attorney fees on appeal.

The district court granted the Pikes' motion for judgment on the pleadings, denied Homeowners' motion, and entered a judgment dismissing the complaint. Homeowners appeal.

## II.

## STANDARD OF REVIEW

This Court reviews a ruling on a motion for judgment on the pleadings applying the same standard as for summary judgment. *Trimble v. Engelking*, 130 Idaho 300, 302, 939 P.2d 1379,

---

[1] John Hengesh, Charlene Hengesh, Tom Iverson, Tracy Iverson, Bradley Link, and Diane Link, were plaintiffs in the underlying case but are not parties to this appeal.

1381 (1997). On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c).

### III.

### ANALYSIS

Homeowners make two arguments on appeal. First, they argue the district court erred in finding the plain language of paragraph 6 does not expressly prohibit either short-term or long-term rentals. Second, they argue the district court erred in resolving any ambiguity in paragraph 6 in favor of the "free use of land" doctrine without first attempting to ascertain the drafters' intent. The Pikes argue Homeowners failed to preserve their argument regarding the interpretation of paragraph 6; the canons of construction do not apply to unambiguous terms; and the district court correctly applied relevant precedent in finding that paragraph 6 is clear and unambiguous and permits short-term rentals. Alternatively, the Pikes argue the district court correctly resolved any ambiguity in favor of their free use of the land.

**A.     CC&R's**

The district court found both parties argued paragraph 6 is plain and unambiguous. The district court found Homeowners' interpretation that "[t]he distinction between a commercial short-term rental offered to the public and a non-commercial private rental of a residence is clear and obvious" was "far from clear and obvious." However, the district court recognized that when it comes to restrictions on property, "the law is unequivocal." The district court then cited language from *Jacklin Land Co. v. Blue Dog RV, Inc.*, 151 Idaho 242, 246, 254 P.3d 1238, 1242 (2011), which reads:

> Because restrictive covenants are in derogation of the common law right of a person to use land for all lawful purposes, covenants are not to be construed to extend by implication any restriction not clearly expressed in the covenants. Rather, [a]ll doubts and ambiguities are to be resolved in favor of the free use of land. Therefore, while clearly expressed restrictions will be upheld, restrictions that are not clearly expressed will be resolved in favor of the free use of land.

3

(Internal citation and quotation marks omitted.)  The district court concluded the plain language of paragraph 6 does not clearly prohibit short-term rentals and therefore must be resolved in favor of the free use of land.

The district court also relied on, and both parties cite to, *Pinehaven Planning Bd. v. Brooks*, 138 Idaho 826, 70 P.3d 664 (2003), although the parties' arguments differ in their interpretation and application of *Pinehaven*.  At issue in *Pinehaven* was whether the CC&Rs permitted the short-term rental of a cabin in the Pinehaven Subdivision.  *Id*. at 827, 70 P.3d 665.  There were three covenants at issue, Covenants 10, 12, and 27.  Covenant 10 read:  "'[n]o commercial or industrial ventures or business of any type may be maintained or constructed' upon any residential lot."  *Id*.  Covenant 12 provided "no more than one (1) single family dwelling may be constructed" upon any residential lot.  *Id*.  Covenant 27 indicated, "The Uniform Building Code shall be used to define any term not defined herein."  *Id*. at 827-28, 70 P.3d at 665-66.

The Idaho Supreme Court first set forth the foundational law relevant to the analysis:

> Idaho recognizes the validity of covenants that restrict the use of private property.  When interpreting such covenants, the Court generally applies the rules of contract construction.  However, because restrictive covenants are in derogation of the common law right to use land for all lawful purposes, the Court will not extend by implication any restriction not clearly expressed.  Further, all doubts are to be resolved in favor of the free use of land.

*Id*. at 829, 70 P.3d at 667 (internal citations omitted).  Next the Court looked at the construction of covenants and explained that in applying the rules of contract construction, the Court engages in a two-step analysis:

> Beginning with the plain language of the covenant, the first step is to determine whether or not there is an ambiguity.  Words or phrases that have established definitions in common use or settled legal meanings are not rendered ambiguous merely because they are not defined in the document where they are used.  Rather, a covenant is ambiguous when it is capable of more than one reasonable interpretation on a given issue.  Ambiguity is a question of law subject to plenary review.  To determine whether or not a covenant is ambiguous, the court must view the agreement as a whole.
> The second step in contract or covenant construction depends on whether or not an ambiguity has been found.  If the covenants are unambiguous, then the court must apply them as a matter of law.  Where there is no ambiguity, there is no room for construction; the plain meaning governs.  Conversely, if there is an ambiguity in the covenants, then interpretation is a question of fact, and the Court must determine the intent of the parties at the time the instrument was drafted.  To determine the drafters' intent, the Court looks to the language of the covenants, the

4

existing circumstances at the time of the formulation of the covenants, and the conduct of the parties.

*Id.* (internal citations and quotation marks omitted).

The Court never reached the second step of the analysis because it concluded the plain language of the covenants resolved the issue. First, the Court considered Covenants 10 and 12 and concluded that those two covenants, when read together, "restrict the use of residential property to the construction of a single-family residence, which may not be used for commercial, industrial, or business purposes." *Id.* The Court then held:

> Renting the property for residential purposes, whether short or long-term, does not fit within these prohibitions. The only building on the Brooks' property remains a single-family dwelling and renting this dwelling to people who use it for the purposes of eating, sleeping, and other residential purposes does not violate the prohibition on commercial and business activity as such terms are commonly understood.

*Id.* at 830, 70 P.3d at 668. The Court noted this interpretation was "further supported" by Covenant 27 and its reference to the Uniform Building Code ("UBC"). *Id.* The Court found the reference to the UBC useful because Pinehaven argued that the covenants forbid the short-term rental of residential property and that short-term rentals were commercial activity. *Id.* The Court noted that the UBC had a broad definition of residential use, including apartments and hotels, and declined to adopt the narrow reading of "residential" as argued by Pinehaven. *Id.* Finally, the Court rejected Pinehaven's argument that the covenants expressly prohibited the short-term rental of the residential properties, in part because Pinehaven's argument focused "on the Brooks' use of the residence, which is solely for the purposes of revenue generation, rather than the renter's use of the residence." *Id.* The Court noted that the Pinehaven covenants did not limit the use of the residential properties to residential use. *Id.*

Here, Homeowners make three arguments that *Pinehaven* does not control the outcome of this case: (1) the structure of the covenants in the two cases are different; (2) *Pinehaven* was decided in 2003, which was "pre-Airbnb, pre-platform economy, and before Idaho or Bonner County adopted any STR-specific tax or permitting regimes"; and (3) the covenants in *Pinehaven* referenced the UBC, while paragraph 6 of the Swan Shores CC&Rs does not, and the Idaho Supreme Court relied upon that code to conclude short-term rentals fell within a UBC definition of residential occupancy. The Pikes argue the holding in *Pinehaven* controls the outcome in this case. More specifically, the Pikes argue that if rentals, either short-term or long-term, are not

5

commercial, then the exception in paragraph 6 for private rentals is irrelevant. The Pikes argue because Homeowners only take issue with the exception for private rentals and that portion of paragraph 6 is irrelevant, then the holding that residential rentals are not commercial is dispositive and the district court did not err.

Covenant 10 in *Pinehaven* reads: "'[n]o commercial or industrial ventures or business of any type may be maintained or constructed' upon any residential lot." *Pinehaven*, 138 Idaho at 827, 70 P.3d 665. Paragraph 6 of the Swan Shores CC&Rs reads: "No commercial enterprises shall be conducted upon said real property. This shall not prevent the private renting of a dwelling on any lot." Both covenants have a general prohibition against all commercial activity, with paragraph 6 providing an exception to that prohibition. We do not agree that the exception in paragraph 6 changes the application of the *Pinehaven* holding to this case. If anything, the Pikes' argument in favor of rentals is stronger in this case because paragraph 6 expressly permits rentals, a condition not present in the *Pinehaven* covenant.

Next, Homeowners argue the facts of *Pinehaven* should not control because it was issued in 2003, before platform-based rentals were developed. Homeowners provide no authority that 2003 was before Airbnb or before a platform economy, so we decline to consider this factual assertion. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). Moreover, this Court is not in a position to disregard controlling authority based on the date of the decision or the purported change in the market economy.

Homeowners also argue *Pinehaven* is not controlling based on the Supreme Court's reference to the UBC; however, before addressing the UBC definition of residential, the Court already concluded that residential rentals, either short-term or long-term, were not commercial activity. *Pinehaven*, 138 Idaho at 830, 70 P.3d at 668. In the paragraph immediately following that conclusion, the Court wrote: "This interpretation is further supported by Section 27 of the Covenants, which provides the Uniform Building Code shall be consulted to provide definitions for terms not defined in the covenants themselves." *Id*. Thus, that the UBC provided additional support for the conclusion that other covenants did not prohibit residential leases does not change the holding that residential leases, regardless of length, did not constitute commercial activity.

Both the covenants at issue in *Pinehaven* and paragraph 6 in this case prohibit commercial activity on residential property. Notwithstanding the language of the *Pinehaven* covenants that prohibited commercial enterprise, the Court nonetheless held residential rentals, regardless of

length, did not violate the commercial activity provision. *Id*. That holding is equally applicable here where paragraph 6 expressly excepts private rentals from commercial activity. Consequently, we need not address the distinction between the type of rentals--public or private--because neither of them constitute commercial activity. As a result, the district court did not err in concluding paragraph 6 did not prohibit short-term rentals.

Even if we were to conclude Homeowners established the Pikes were engaged in a commercial activity, we agree with the district court that the plain language of paragraph 6 does not prohibit short-term rentals. The district court noted paragraph 6 clearly permits rentals but places no limits on the duration of those rentals. Homeowners argue various canons of construction apply and, when applied, make clear that the plain language of paragraph 6 prohibits short-term, platform-based rentals. We are unpersuaded. The canons of construction are used to assist in contract interpretation only where an ambiguity exists. *Mut. of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235-36, 912 P.2d 119, 122-23 (1996). Thus, the canons are not used to ascertain the plain meaning, but rather, to give meaning to an otherwise unclear provision. *See Wall & Assocs., Inc. v. Dep't of Fin*., __ Idaho __, __, 574 P.3d 807, 816 (2025) (declining to adopt canons of construction because the statutory language was unambiguous).

At all stages of these proceedings, Homeowners have argued paragraph 6 is plain and unambiguous. In both its motion for judgment on the pleadings and at the motion hearing, Homeowners argued that the plain language of paragraph 6 is unambiguous. The district court recognized Homeowners' position in its memorandum order and decision on the motions for judgment on the pleadings, stating, "The Plaintiffs argue that CC&R paragraph 6 is clearly expressed and unambiguous, such that its plain meaning must be applied."

If, as argued by Homeowners, the language is plain and unambiguous, there is no reason to apply the canons of construction. Conversely, if Homeowners are arguing paragraph 6 is ambiguous, we will not consider arguments made for the first time on appeal. *Eagle Springs Homeowners Ass'n, Inc. v. Rodina*, 165 Idaho 862, 869, 454 P.3d 504, 511 (2019).

Moreover, some of the foundational facts for Homeowners' arguments are unsupported. For example, Homeowners argue the fixed meaning canon requires this Court to construe the terms of the CC&Rs as they would have been understood in 1979. Homeowners argue that "the phrase 'private renting of a dwelling' then referred to traditional residential leasing: long-term arrangements in which a tenant occupied a home for months, if not years, as a primary residence."

7

However, Homeowners provide no authority for this assertion, and we decline to consider arguments not supported by authority. *Bach*, 148 Idaho at 790, 229 P.3d at 1152.

Thus, we must address whether the district court correctly concluded the term "private rental" is unambiguous and permits the Pikes to lease their home on a short-term basis. Homeowners argue a private rental is not one that is a "fee-based, publicly advertised, platform-mediated short-term rental." The Pikes argue the district court correctly concluded that paragraph 6 does not clearly prohibit short-term rentals premised upon public advertisement, in part because paragraph 6 does not clearly speak to the permissible length of a rental or the permissible manner of advertising for a rental. The Pikes argue paragraph 6 similarly does not clearly permit the Pikes from entering into a contract of any nature. The Pikes argue the district court correctly refused to extend unwritten or implied restrictions into paragraph 6.

In analyzing a restrictive covenant, we begin with the plain language of the covenant; if the language is plain and unambiguous, the analysis ends. In this case, both parties argue paragraph 6 is plain and unambiguous but disagree as to its meaning. Paragraph 6 reads: "No commercial enterprises shall be conducted upon said real property. This shall not prevent the private renting of a dwelling on any lot." There is no question that the plain language of paragraph 6 prohibits commercial enterprises but allows private renting. Similarly, the plain language of paragraph 6 does not place a time restriction on the length of that permissible private renting or the method by which the rental is advertised.

Homeowners ask this Court to read a time restriction into the term "private rental" by arguing a private rental is not a "fee-based, publicly advertised, platform-mediated short-term rental." Homeowners provide various definitions, including one from BLACK'S LAW DICTIONARY (12 ed. 2024), which defines "private" as "[o]f, relating to, or involving an individual, as opposed to the public or the government." They also provide a definition from Merriam-Webster that "private" is defined as "carried on by the individual independently of the usual institutions." However, the example given for that definition is "a doctor in *private* practice." *Private*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/private (last accessed Oct. 14, 2025). If that definition is used, then paragraph 6 would allow rentals carried on by the Pikes independent of like institutions, i.e., other short-term, platform-based rentals, which undercuts the Homeowners' arguments. Another of the multiple definitions of "private" provided by Merriam-Webster is, "intended for or restricted to the use of a particular

8

person, group, or class." *Id*. The example there is "a private park." *Id*. Using that definition, paragraph 6 permits rentals "intended for or restricted to the use of a particular person, group, or class." Nothing in the record suggests that the Pikes did not restrict each rental to a "particular person, group, or class." The fact that a third-party arranges the rental does not change the nature of the rental as between the Pikes and the particular people or group who rent the home.

During the motion hearing, the district court questioned both parties about their respective positions regarding the plain meaning of paragraph 6. For example, Homeowners agreed with the district court that if the owners of a home had a son in a fraternity and told the son and his friends that members of the fraternity could rent the house, that would be a private rental. However, if the verbal invitation resulted in every weekend being rented by the son and his friends, Homeowners stated, "That may be pushing it, your Honor." Conversely, Homeowners also stated that a minimum thirty-day rental would not be okay if the rental was facilitated through Airbnb, but a similar rental would be permitted if advertised through Craigslist.

The district court attempted to clarify that the "issue" for Homeowners was the third-party brokering as opposed to the short-term rental and Homeowners responded that using brokers was "the clearest example of commoditization." Homeowners argued any renting that encompassed government oversight was not private renting; however, the district court noted that government oversight or regulation encompassed every sort of rental, so that did not distinguish public from private rentals.

These exchanges between the district court and the parties illustrate the risks of reading terms into otherwise plain language. As noted by the district court, "We are stuck with what's written in 1979. These two sentences. So I can't just say, well I'm going to help you guys find a line that will be fair to everybody. I mean, that--I'm certainly going outside my authority if I tried to do that."

We are not unsympathetic to Homeowners' position and the impact that short-term rentals have on neighborhoods. However, this Court must follow the precedential authority of *Pinehaven*, which holds that short-term residential rentals are not commercial activity. Similarly, this Court can neither read terms into restrictive covenants that do not otherwise exist nor disregard the plain language of the covenant at issue in this case. Consequently, the district court did not err in holding paragraph 6 does not expressly prohibit short-term rentals.

9

The district court provided an additional rationale for finding paragraph 6 did not prohibit short-term rentals. The district court relied on the holding in *Adams v. Kimberley One Townhouse Owner's Ass'n, Inc.*, 158 Idaho 770, 352 P.3d 492 (2015) in concluding Homeowners fell short of showing that the restriction on the property--banning short-term rentals--was clearly expressed. Following the conclusion in *Adams*, the district court reasoned that restrictions that are not clearly expressed must be resolved in favor of the free use of land. Thus, the district court reasoned that while there was some doubt about the meaning of paragraph 6, in the absence of a clear restriction, any doubt was resolved in favor of the Pikes' free use of their land.

Homeowners fail to address the holding in *Adams* and instead argue the district court erroneously considered and applied *Pinehaven* because *Pinehaven* holds that if there is an ambiguity, the court must first determine the intent of the drafters, and only if the intent of the drafters cannot be ascertained, then the ambiguity is resolved in favor of the free use of the land. Homeowners argue the district court erred because it failed to analyze "who the drafters were, the circumstances of 1979, or whether their language usage reflected customary rural drafting practice in Idaho," and similarly erred in concluding "that drafters in a small north Idaho neighborhood could have said more." The Pikes argue that, even if there was an ambiguity, any ambiguity is resolved in favor of the free use of the land. The Pikes also argue the district court adequately addressed the three factors set forth in *Pinehaven*, concluded that an ambiguity still remained, and resolved it in favor of the free use of the land.

We disagree with Homeowners' argument regarding the district court's application of *Pinehaven*. The district court followed this framework in its analysis of paragraph 6. After determining the plain language did not expressly prohibit short-term rentals, the district court reasoned:

> *At best*, and viewing the facts and inferences in a light *most favorable* to [Homeowners], the Court finds CC&R paragraph 6 to be ambiguous when it comes to short-term rentals. While CC&Rs are, generally, to be interpreted in accordance with contract principles, in this case, the Court will not look to the attendant circumstances to try to determine the meaning of paragraph 6. Rather, a finding of ambiguity simply demonstrates that a prohibition on short-term rentals has not been clearly expressed. That is, one cannot say that an ambiguous provision, such as paragraph 6 of the CC&Rs, is also a clear expression restricting the use of property. It is not.

10

The district court reasoned that if there was any ambiguity, the ambiguity only indicated the lack of a clearly expressed prohibition and in the absence of a clearly expressed prohibition, the district court applied the free use of land doctrine.

However, because the district court found the term might be ambiguous, it properly followed the analytical framework set forth in *Pinehaven*. The district court looked to the language of the covenants and found the plain language of paragraph 6 did not expressly prohibit short-term rentals.

Next, the district court looked at the circumstances at the time paragraph 6 was drafted and found, "While it is unsurprising that CC&Rs from 1979 do not directly address the issue of Airbnb or VRBO rentals, had the drafters of the CC&Rs intended to limit short-term rentals they certainly could have done so." The district court then cited several cases that addressed the issue of short-term rentals in CC&Rs in the relevant timeframe. Additionally, at the motion hearing, the parties discussed that, even in 1979, other forms of short-term rentals existed, for example, bed-and-breakfast style accommodations. While Homeowners take issue with the district court's conclusion that the drafters could have further limited short-term rentals, Homeowners provided no evidence of the drafters' intent and have not pointed to any evidence that contradicted the district court's conclusion. As to the third factor, Homeowners argue the "unamended text [of the CC&Rs] and neighborhood stability corroborate a shared understanding of what the circumstantial aims of the drafters were." In support of that, Homeowners reference a stipulated judgment excluding nightly rentals that was attached to their complaint.

The stipulated judgment was attached to Homeowners' complaint for declaratory judgment as exhibit C, which is a 2002 judgment entered by another district court judge prohibiting short-term rentals in the Swan Shores subdivision. The district court in this case noted the judgment was entered based on a stipulation between the parties and there was never any finding by that district court judge regarding the CC&Rs. Consequently, the district court explicitly declined to consider the judgment as either binding or persuasive authority. This Court similarly will not consider the stipulated judgment to be anything more than an agreement between those parties to resolve the issue in that case. There is no evidence in the record that any of the parties to that stipulated judgment were the drafters of paragraph 6 and we decline to read the stipulated judgment as reflecting the intent of the drafters, as opposed to the intent of the parties in that case to settle their dispute.

11

Returning to factor three, the district court did not analyze the third factor, but there is no dispute the Pikes have, on occasion, leased their home as a short-term rental. Homeowners argue the Pikes' short-term rental constitutes commercial activity and is not a private rental and support this argument by pointing to the fact that the Pikes complied with county ordinances and had to pay Airbnb a service fee. The Pikes argue that Homeowners have failed to show the drafters' intent based solely on the Pikes' compliance with local ordinances and payment of a fee. The Pikes also argue that Homeowners' citation to the record in support of their argument does not provide support for the facts asserted.

Contrary to Homeowners' position, the conduct of parties does not indicate the clear intent of the drafters to prohibit short-term rentals. The Pikes' rental of their home and the Homeowners' objection to that rental only show different interpretations of what may have been the drafters' intent. Because Homeowners presented no evidence of the drafters' intent, the district court was left with only the language of the document. Given that, the district court did not err by implicitly concluding the drafters' intent (or lack of evidence thereof) did not resolve any remaining ambiguity regarding paragraph 6. As any ambiguity regarding paragraph 6 was left unresolved, *Pinehaven* requires the remaining ambiguity to be resolved in favor of the Pikes' free use of their land. The district court did not err in concluding that any doubt regarding the meaning of paragraph 6 was resolved in favor of the Pikes' free use of their land. *Pinehaven*, 138 Idaho at 830, 70 P.3d at 668.

**B.     Attorney Fees**

The Pikes have requested attorney fees on appeal pursuant to Idaho Code § 12-121 and Idaho Appellate Rules 40 and 41. An award of attorney fees may be granted under I.C. § 12-121 to the prevailing party and such an award is appropriate when the Court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995). An award of attorney fees is appropriate if the appellant only invites this Court to second-guess the trial court on conflicting evidence, or if the law is well settled and the appellant has made no substantial showing that the lower court misapplied the law, or no cogent challenge is presented with regard to the trial court's exercise of discretion. *Pass v. Kenny*, 118 Idaho 445, 449-50, 797 P.2d 153, 157-58 (Ct. App. 1990). That standard for an award of attorney fees has been satisfied in this case as it relates to attorney fees and costs associated with oral argument.

12

At oral argument, Homeowners argued paragraph 6 was ambiguous and the district court erred in granting their Idaho Rule of Civil Procedure 12(c) motion for judgment on the pleadings and in failing to hold a hearing at which additional evidence could have been presented, and did not engage in the correct analysis in deciding paragraph 6 of the CC&R's was unambiguous, so this Court should remand the case. These arguments are unsupported by the record and the briefing submitted by Homeowners. In both the trial court and in the briefing on appeal, Homeowners argued paragraph 6 was plain and unambiguous. When questioned about this at oral argument, counsel conceded that trial counsel argued paragraph 6 of the CC&R's was plain and unambiguous, but he disagreed with the position taken by trial counsel. Appellate counsel's disagreement with the position taken by trial counsel does not serve to preserve the argument, raised for the first time on appeal, that paragraph 6 of the CC&R's was ambiguous and therefore, it is not properly before this Court. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

Next, in the district court, the Pikes moved for a judgment on the pleadings pursuant to I.R.C.P. 12(c); Homeowners then also moved for an I.R.C.P. 12(c) judgment on the pleadings. Nonetheless, at oral argument, and for the first time, counsel for Homeowners argued the district court should have rejected the request by both parties to submit the case on the pleadings, reviewed the pleadings, concluded the parties did not submit a sufficient quantum of evidence, and as a result, should have held a hearing at which both parties could have presented additional evidence.

As the Pikes' pointed out at oral argument, if Homeowners felt they had provided insufficient evidence for judgment on the pleadings, I.R.C.P. 12(d) allowed Homeowners to provide additional evidence and convert their motion into an I.R.C.P. 56 motion for summary judgment. Moreover, the burden is not on the district court to tell the parties how to try a case, that burden remains squarely on the parties. Regardless, the doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error. *Thomson v. Olsen*, 147 Idaho 99, 106, 205 P.3d 1235, 1242 (2009). One may not complain of errors one has consented to or acquiesced in. *Id*. In short, invited errors are not reversible. *Id*. Because Homeowners filed an I.R.C.P. 12 (c) motion for judgment on the pleadings, they cannot now complain that the district court ruled on their request.

Finally, the request at oral argument that this Court remand the case for the presentation of additional evidence directly conflicts with the request Homeowner's made in the trial court and in

their opening brief, that the court "hold, as a matter of law," paragraph 6 "unambiguously prohibits platform-based, short-term rentals." Oral argument is not the time or place to request an alternate remedy that was never requested in the trial court and was not requested in the briefing.

Accordingly, we find the I.C. § 12-121 standard has been met as it relates to oral argument and the Pikes' are awarded attorney fees on appeal related to the costs of oral argument. As the prevailing parties, the Pikes are also entitled to costs on appeal.

## IV.

## CONCLUSION

The district court did not err in concluding the plain language of paragraph 6 of the CC&Rs did not prohibit short-term rentals. The district court did not err in concluding any remaining ambiguity regarding paragraph 6 was resolved in favor of the Pikes' free use of their land. Attorney fees as they are related to oral argument and costs on appeal are awarded to the Pikes. The judgment of the district court is affirmed.

Judge LORELLO and Judge TRIBE, **CONCUR**.